**STATE of Missouri, Respondent,**

v.

**Tony ENO, alias Otis Eno, Appellant.**

No. 45892.

Supreme Court of Missouri,
Division No. 2.

June 9, 1958.

No appearance for appellant.

John M. Dalton, Atty. Gen., J. Richard Roberts, Sp. Asst. Atty. Gen., for respondent.

BARRETT, Commissioner.

Tony Eno has been found guilty of robbery in the first degree and sentenced to twenty years' imprisonment.

According to the evidence of both the state and the defendant the facts were that about 6:30 p. m. on January 7, 1956, four or five men participated in the armed robbery of a Safeway Store in Joplin. The four or five men drove to Joplin from Kansas City in three automobiles. At least three of the men, one admittedly armed with a gun, entered the store and at gun point compelled the manager to open a safe and place more than $1,800 in currency and coins in a paper bag and hand to one of the robbers. The robbers then caused the manager to walk ahead of them pushing a grocery cart past the check-out girl. Because he was compelled to walk ahead of the robbers most of the time the store manager was unable to identify Tony as one of the robbers. But Shirley Gibbs, the check-out girl, and Norman Boyd, who was sacking groceries for Shirley, and Charles W. Raines, a customer, all positively identified Tony as one of the robbers. Shirley and Norman had previously identified Tony from photographs, Norman had picked him out in a jail cell in Neosho and Shirley had picked him out in a police line-up in Carthage. When cross-examined as to the certainty of her identification Shirley said, "He just stood out. * * * His face just stood out, just something."

Tony's defense was an alibi. Among other things he testified that on January 7, 1956, he had an appointment with his niece, Mrs. Humphreys, that he arrived at her home in Kansas City about 1:30 or 2 o'clock and after coffee drove her downtown and let her out at Harzfeld's—she

says it was then 2:30 or later. His car had been involved in a wreck and he drove to Allen Chevrolet for an estimate and then to Hilliard Chevrolet to check on the repair of his automobile. His car repair was not finished and he then went "back downtown." He denied that he was in Joplin on January 7, 1956. On cross-examination he said, after he again drove downtown, that he went to a barbershop. Thereafter he says that he went to his nephew's office, Dr. Humphreys', and had an adjustment on his back. He thinks it was then 6 or 6:30. He said, "I sincerely believe," after going to Dr. Humphreys' office, that he went to his sister's home and there saw the Alexanders, his sister's tenants. He was not certain about giving the prosecuting attorney the name of Florence Guthrie as a person he saw sometime during the evening. Mrs. Humphreys corroborated his testimony. "Lindy" Pierson, a defense witness, testified that on January 7, 1956, he and "Shep" (Sheppard), Ronald Eugene Francisco, known by the alias of Wilson, (deceased at the time of the trial, incidentally) and Robert C. Weathers drove to Joplin in three automobiles, held up the manager and robbed the Safeway Store, left two of the automobiles hidden behind a chat pile near Joplin and drove back to Kansas City. He said that Tony was not with them on that day, that he did not see him that day, and that he did not participate in the robbery of the Safeway Store in Joplin. Formerly they were fellow inmates of the Kansas State Penitentiary which "Lindy" says did not necessarily make them "good friends. I am not a good friend of him."

Despite the corroboration of his plea of not guilty and alibi there were two circumstances in his testimony from which the jury may have drawn unfavorable, incriminating inferences upon the essential question of his guilt. He admitted on cross-examination, not only that he had told the prosecuting officials but the fact was, that on the 8th, the day following the robbery, he and "Lindy" Pierson's nephew,

Trudy, came to Joplin, got the two automobiles hidden behind the chat pile and returned them to Kansas City. He denies that two women, one of whom he had married, came with them but since there were two cars to be returned he does not explain how he and Trudy got to Joplin in an automobile and returned two automobiles back to Kansas City. He denied or was evasive about parts of the conversation and he claims that the interview he had with the prosecuting attorney and his investigator was not of his own seeking, nevertheless, he admits that he did talk to them prior to his trial. He now says that what he did relate concerning the Safeway Store robbery was told to him by Francisco. In any event, the investigator testified that the meeting in the prosecuting attorney's office was arranged at Tony's request and Tony, in attempting to persuade the prosecuting attorney and his assistants of his innocence, said that he could tell them who had committed the robbery, where each man stood, by which doors they left, where the cars were parked and the route they took out of Joplin. In addition to Pierson, Weathers, Wilson (Francisco) and Sheppard, he said that the fifth man was Ollie Penny and that two women accompanied them on the trip.

The single assignment in his motion for a new trial is a claim of newly discovered evidence. The motion is in proper form, supported by affidavits from his counsel indicating diligence in searching for certain witnesses and an affidavit from Sylvia M. Dobbins who says that on January 7, 1956, about 7:00 p. m., Tony came to her apartment and asked if she and her two children, Jackie, age 3, and Butchie, age 1, would like to take a ride. She says that the four of them left her apartment about 7:30 p. m. and drove to Allen Chevrolet in North Kansas City, Tony went in the garage and was there a few minutes, and then they drove five miles to Riverside and stopped at Florence Guthrie's liquor store but bought no liquor and returned to her apartment about 8:30 where "Mr. Eno walked

me to the door, but did not come in." In addition to his motion for a new trial and since the filing of a full transcript and the perfection of his appeal, Tony has lodged numerous affidavits, letters and other communications with the court, some of which have to do with his claim of newly discovered evidence.

The evidence described in the motion and affidavit is not in point of fact "newly discovered evidence," Tony must have known, as he tacitly admits, the facts concerning Sylvia. Her affidavit conflicts in some respects with Tony's testimony and at most, from his point of view, was a "newly recollected fact"—not newly discovered, and his motion and affidavit negative his assertion of lack of knowledge of the existence of the evidence. There was no mention of his inability to procure witnesses when his case was called for trial and there was no application for a continuance and no excuse for not asking for a continuance. 23 C.J.S. Criminal Law § 1455b, p. 1240. At a later period in the trial defendant's counsel asked for a brief delay so that "one other witness" could be there, the request was granted and the witness, a former employer, appeared and testified. The evidence was cumulative and there was no abuse of discretion in the court's denying him a new trial for the reason assigned in his motion. 23 C.J.S. Criminal Law §§ 1453–1454, pp. 1224–1228; State v. Pittman, Mo., 221 S.W.2d 163; State v. Hayden, Mo., 190 S.W. 311; State v. Tompkins, Mo., 277 S.W.2d 587.

In some of the communications lodged with the court and in his statement to the court on allocution Tony complains that the information improperly and unfairly alleges his admitted prior convictions. He appears to complain that he was guilty of "jail break" not "escaping from prison" in Oklahoma and that he was erroneously said to have been convicted on two counts of armed bank robbery in Kansas—the fact was that he was convicted of entering a bank in Kansas with his brother and an-

other and "by means of certain pistols or revolvers" of putting the bank officials in fear "did take and carry away" $4,126.86 for which offense he served more than twenty years in the Kansas State Penitentiary. In the beginning of his trial, in open court, his counsel explained to the court that they had talked the entire matter over with Tony and they were stipulating and admitting two prior felony convictions. Counsel said, " * * * we have entered into that agreement and want it verified with the Court *that you understood what we were doing and that you concur in the action we are taking. The Defendant: That is right.*" At a later period in the trial his counsel made this announcement, *"The defendant has requested that he be placed on the stand* and at this time we can proceed by putting the defendant on the stand." He did testify and in so doing again admitted the two prior felony convictions in Kansas and Oklahoma. The information may have been incorrect "clerically" but it properly and appropriately charged the offense of robbery in the first degree and two prior felony convictions. V.A.M.S., Secs. 560.120, 556.280, 556.290. His prior record of convictions may not have enhanced his standing with the jury. However, the jury was specifically instructed that the prior convictions were not to be considered as evidence of his guilt of the robbery but only as affecting his credibility. In any event, the jury obviously ignored the court's other instruction that if they found him guilty of the robbery and if they found the two prior convictions they should assess his punishment at death or life imprisonment. The sentence of twenty years' imprisonment for robbery with a dangerous and deadly weapon was within the reasonable limits of the statute, not less than five years. V.A.M.S., Sec. 560.135.

■ Further in this connection, the two italicized statements quoted above are sufficient in themselves to demonstrate that Tony was represented by wise and capable counsel who preserved every possible right

and made the most of every possible defense. The affidavits and communications he has lodged with the court since the filing of the transcript are not a part of any authenticated record, they are not properly here and have not been considered. State v. Holloway, 355 Mo. 217, 195 S.W.2d 662; State v. Barker, 294 Mo. 303, 242 S.W. 405. The appellant is not represented by counsel upon this appeal, nevertheless, the court has considered "the record before it" (Supreme Court Rules 28.02, 28.08, 42 V.A.M.S.), there was allocution and the sentence and judgment are responsive (Supreme Court Rules 27.08, 27.09) and there were no manifest errors improperly infringing the appellant's right to a fair trial and accordingly the judgment is affirmed.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All concur.