**STATE of Missouri, Respondent,**

v.

**Said A. MADANI, Appellant.**

**Said A. MADANI, Appellant,**

v.

**STATE of Missouri, Respondent.**

**Nos. 18401, 19928.**

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 7, 1995.

Matthew J. O'Connor, Office of the State Public Defender, Columbia, for appellant in No. 18401.

John M. Schilmoeller, Asst. Public Defender, St. Louis, for appellant in No. 19928.

Jeremiah W. (Jay) Nixon, Atty. Gen., Becky Owenson Kilpatrick, Asst. Atty. Gen., Jefferson City, for respondent.

CROW, Judge.

A jury found Appellant, Said A. Madani, guilty of the class D felony of passing a bad check, § 570.120, RSMo 1986,[1] and assessed punishment at six months' imprisonment in jail and a fine in an amount to be determined by the trial court. The trial court entered judgment in accordance with the verdict, imposing a $1,000 fine. Appellant brings appeal 18401 from that judgment.

While that appeal was pending, Appellant filed a motion to vacate the judgment and sentence per Rule 29.15.[2] Appellant failed to appear in the motion court for an evidentiary hearing,[3] whereupon the motion court dismissed the 29.15 proceeding "for failure to prosecute." Appellant brings appeal 19928 from that order.

We consolidated the appeals, Rule 29.15(*1*), but address them separately in this opinion.

### Appeal 18401

The first of Appellant's two points relied on in this appeal avers the trial court erred in denying Appellant's motion for judgment of acquittal at the close of the State's evidence and again at the close of all the evidence in that the State failed to present sufficient evidence to convince a rational trier of fact beyond a reasonable doubt that Appellant passed the check "with the purpose to defraud."

■ Because Appellant presented evidence in his own behalf after the State rested, Appellant waived any claim of error in the denial of the motion for judgment of acquittal at the close of the State's evidence. *State v. Purlee,* 839 S.W.2d 584, 587[1] (Mo.

banc 1992). Consequently, the only issue we must address in point one is whether the trial court erred in denying the motion for judgment of acquittal at the close of all the evidence. *Id.*

■ In reviewing a challenge to the sufficiency of the evidence, we accept as true all of the evidence favorable to the verdict, including all favorable inferences drawn from the evidence, and we disregard all evidence and inferences to the contrary. *State v. Grim,* 854 S.W.2d 403, 405 (Mo. banc 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 562, 126 L.Ed.2d 462 (1993). So viewed, the evidence established the following facts.

Sometime before August 18, 1989, Appellant bought two motor vehicles at Joplin Dealers Auto Auction ("JDAA"). He gave JDAA a check for each vehicle. Both checks were returned to JDAA unpaid because of "not sufficient funds." JDAA notified Appellant.

On August 18, 1989, Appellant entered JDAA's office and stated he "had been notified that he had some bad checks, and he wanted to pick them up." Susan Simmons, a JDAA employee, retrieved the two dishonored checks and added their amounts, getting a total of $3,900. Appellant wrote a $3,900 check dated August 18, 1989, drawn on Union National Bank, Wichita, Kansas, payable to JDAA, and handed it to Simmons in exchange for the two dishonored checks.

JDAA deposited the $3,900 check in its account. The check was returned by the drawee bank "Unable to locate." Helen Howard, an officer of JDAA, sent Appellant a "ten-day notice" requesting payment of the check. Howard's testimony:

"Q. Based upon this ten-day letter and your conversations with Mr. Madani, did he ever make good this $3,900?

A. No.

1. The jurisdictional statement in Appellant's brief identifies the statute as § 570.120, RSMo Cum. Supp.1990. The jurisdictional statement in the State's brief identifies the statute as "§ 570.102 [sic], RSMo Supp.1992." The check was passed August 18, 1989. The version of § 570.120 in force on that date was the version in RSMo 1986. That version was amended by Laws of Missouri 1989, S.B. 310, pp. 1089–90, which took effect August 28, 1989, ten days after the check was passed. In this opinion, references to § 570.120 are to the version in RSMo.1986.

2. Rule references are to Missouri Rules of Criminal Procedure (1993).

3. According to the record, Appellant was free on appeal bond when he failed to appear.

Q. Did he ever return the two vehicles that were purchased using that $3,900 check?

A. No, ma'am."

It was stipulated that Appellant opened the account at Union National Bank, Wichita, Kansas, on July 31, 1989, with a balance of $185. No deposits were made thereafter, and the account was closed August 9, 1989.

Appellant testified he was in the "car business" and had dealt with JDAA "on and off for many years." Appellant avowed JDAA never refused to take a check from him. He conceded "a few" of his checks to JDAA "had been returned by the bank." However, explained Appellant, "I used these checks as a promissory note and they gave me extension of time to pay."

Instruction 5, the verdict-director, read, in pertinent part:

"If you find and believe from the evidence beyond a reasonable doubt:

First, that on or about August 18, 1989, in the County of Newton, State of Missouri, the defendant, with the purpose to defraud, passed to Sue Simmons a check in the amount of $3,900.00, drawn upon Union National Bank, Wichita, Kansas, dated August 18, 1989, payable to Joplin Dealers Auto Auction, and

Second, that at the time the defendant passed such check, he knew it would not be paid, and

Third, that the check was made out in an amount of at least one hundred fifty dollars,

then you will find the defendant guilty of passing a bad check.

. . . ."

Section 570.120 reads, in pertinent part:

"1. A person commits the crime of passing a bad check when, with purpose to defraud, he . . . passes a check . . . knowing that it will not be paid by the drawee. . . .

2. If the issuer had no account with the drawee . . . at the time the check . . . was issued, this fact shall be prima facie evidence of his purpose to defraud and of his knowledge that the check . . . would not be paid."

Appellant maintains the evidence was insufficient to support a finding that he passed the $3,900 check with the purpose to defraud in that there was no evidence that he received anything of value for it. Citing *State v. Hack*, 284 S.W. 842 (Mo.App.1926), Appellant asserts: "[A]n element of passing bad checks is that a thing of value must be procured by the instrument."

In *Hack*, the accused was convicted of issuing a check with intent to defraud in violation of § 3553, RSMo 1919. The check was given in payment of a "past-due account." The appellate court held that inasmuch as the accused obtained nothing for the check, he "could not be held as for having issued the check with intent to defraud." *Id.* The opinion noted that after the accused issued the check, the General Assembly amended § 3553 to apply where a person uttered a check "for the payment of any past-due debt." *Id.* However, because the accused committed no crime under § 3553 as it existed when he issued the check, the conviction was reversed. *Id.* at 843.

Appellant also cites *State v. Kleen*, 491 S.W.2d 244 (Mo.1973). There, a Missouri resident was convicted of issuing an insufficient funds check in violation of § 561.460, RSMo 1969. The check, drawn on a Missouri bank, was issued in Tennessee in payment for a truckload of cottonseed meal purchased there. Reversing the conviction, the Supreme Court of Missouri held no crime was committed in Missouri because the accused got nothing for the check until it was delivered to the seller in Tennessee, simultaneously with the purchase. *Id.* at 246. The Court explained, "Then and there is where the required intent to defraud by misrepresentation of an existing fact occurred—the obtaining of the meal by completion and delivery of the check knowing at the time there were not sufficient funds or credit for payment in full on presentation." *Id.*

As additional authority, Appellant cites *State v. Garner*, 432 S.W.2d 259 (Mo.1968). There, an accused pled guilty to uttering an insufficient funds check in violation § 561.460, RSMo 1959. That statute made it

a crime to utter, with intent to defraud, an insufficient funds check "to procure any article or thing of value or for the payment of any past-due debt or other obligation of whatsoever form or nature or ... for any other purpose." *Id.* 260. The information failed to allege that the payee parted with anything in exchange for the check, or that the check was given for a past-due debt or for any other purpose. *Id.* The Supreme Court of Missouri held the information deficient and vacated the conviction. In discussing the element of intent to defraud, the opinion referred to cases holding that the payee must be induced to part with his property. *Id.* at 260–61. However, the opinion noted that under § 561.460, it was a felony to give an insufficient funds check for $100 or more in payment of a past-due debt. *Id.* at 261.

Relying on *Hack, Kleen* and *Garner,* Appellant argues: "[T]he record is void of any indication that Appellant received property in exchange for the check. Rather, the check was written as a promissory note for debt owed to [JDAA]."

■ The jury was not required to believe Appellant's testimony that the $3,900 check was given to JDAA as a promissory note. The jury was entitled to believe all, part or none of the testimony of any witness. *State v. Porter,* 640 S.W.2d 125, 127 (Mo.1982). The jury had the right to believe the testimony adduced by the State and reject the testimony offered by Appellant. *Id.*

■ Unlike earlier insufficient funds check statutes, § 570.120, quoted in part *supra,* does not require that the check be given to procure something of value or in payment of a past-due debt. Section 570.120 requires only that he who passes a bad check do so "with purpose to defraud," knowing the check will not be paid by the drawee.

Of course, proving the passer had the purpose to defraud is easier when he obtains something of value from the payee. However, guilt under § 570.120 hinges on purpose to defraud, not on obtaining something of value.

■ Viewed favorably to the State, the evidence showed Appellant could have been prosecuted for violating § 570.120 in giving JDAA the two insufficient funds checks by which he purchased the two motor vehicles prior to August 18, 1989. He undeniably obtained something of value—the vehicles— by means of those checks. When Appellant gave JDAA the $3,900 check on August 18, 1989, in exchange for the two checks mentioned in the two preceding sentences, he obtained possession of evidence which would have been vital in such a prosecution. The jury could reasonably infer that by obtaining the two earlier prosecutable checks in exchange for the worthless $3,900 check, Appellant acted with purpose to defraud.

Furthermore, there was evidence that JDAA accepted checks from Appellant after August 18, 1989, hoping such checks would clear the bank, thereby enabling JDAA to recover its loss on the two vehicles mentioned earlier and on others bought by Appellant with worthless checks. The jury could have reasonably inferred that Appellant passed the $3,900 check as part of a scheme to stall JDAA and frustrate prosecution, thereby manifesting a purpose to defraud.

Purpose to defraud was an issue in *State v. McMikle,* 673 S.W.2d 791 (Mo.App.S.D.1984). There, the accused gave a commodities broker an insufficient funds check to cover a "debit situation" in his account and to provide margin money so he could continue trading in an effort to recover his losses. This Court held such evidence sufficient to support a finding that the accused passed the check with the purpose to defraud. *Id.* at 793–96.

Surprisingly, we have found only one case with facts identical to the instant case. In that case, *Williams v. State,* 198 Tenn. 439, 281 S.W.2d 41 (1955), the accused bought coal, paying for it by check. The check was dishonored by the drawee bank. The accused then persuaded the payee to accept a check on a different bank in exchange for the first check. The second check was likewise dishonored. Using the second check, the prosecutor charged the accused with passing a worthless check. On appeal from his conviction, the accused maintained that inas-

much as the second check was given in payment of a preexisting indebtedness, it could not be the basis for a conviction. 281 S.W.2d at 42.

Affirming the conviction, the Supreme Court of Tennessee held that the accused practiced a fraud on the coal company by the first worthless check. *Id.* The opinion continued:

> "We think the passing of the two worthless checks was to all intents and purposes a single transaction.
>
> .    .    .    .    .
>
> If the [first] check ... was a fraud on the payee, as it clearly was, the [second] one ... as a substitute for it was no less a fraud...."

*Id.* 281 S.W.2d at 42–43.

We need not decide whether Appellant's purchase of the two vehicles with worthless checks and his subsequent acquisition of those checks in exchange for the worthless $3,900 check constituted a single transaction. It is sufficient to hold, as we have, that the evidence favorable to the verdict, discussed *supra,* was sufficient to support a finding that Appellant passed the $3,900 check with the purpose to defraud.

The only other case cited by Appellant in support of his first point, *State v. Phillips,* 430 S.W.2d 635 (Mo.App.1968), does not aid him. It involved a check which the drawer asked the payee to hold for several days before presenting it for payment. The appellate court held the drawer had no intent to defraud in that he did not represent the check was good when he uttered it, but only that it would be good later, a representation of a future condition. *Id.* at 636–37[1]. *Phillips* would help Appellant only if JDAA had taken the $3,900 check as a promissory note. That hypothesis depended on Appellant's testimony. As noted earlier, the jury was not compelled to believe Appellant (and evidently didn't). Appellant's first point is denied.

Appellant's second point asserts the trial court erred in submitting the case to the jury by Instruction 5, quoted in part *supra,* and in rejecting a verdict-directing instruction tendered by Appellant, marked "Instruction A." Appellant insists Instruction 5 was erroneous in that it "failed to require the jury to determine whether Appellant had received money or property in return for the check." Instruction A would have required the jury to find, among other facts, that Appellant received money or property in return for the $3,900 check.

Instruction 5 was based on MAI–CR 3d 324.30.1 (1–1–87). Appellant does not claim Instruction 5 should have been patterned on an instruction other than MAI–CR 3d 324.30.1 or that Instruction 5 deviated from MAI–CR 3d 324.30.1. Appellant argues only that Instruction 5 was deficient because it failed to hypothesize that he obtained property or money in exchange for the $3,900 check.

Appellant's second point hinges on his premise that no violation of § 570.120 occurs unless the passer of a bad check obtains money or property for it. We rejected that theory in denying Appellant's first point. That ruling is fatal to his second point. It is denied.

Judgment affirmed.

### Appeal 19928

Appellant's lone point relied on in this appeal avers the motion court erred in dismissing Appellant's pro se motion for post-conviction relief without an evidentiary hearing and without entering findings of fact and conclusions of law addressing the grounds for relief in the motion. The record on which those claims of error are based consists solely of Appellant's motion and the motion court's docket sheet.

From those sources, we divine that on August 2, 1994, the motion court scheduled an evidentiary hearing for September 13, 1994. The docket entry states: "Movant's counsel must attend and present evidence and argue on behalf of his client."

The next activity of record occurred August 23, 1994, when a motion for continuance was filed. The record does not show which side filed the motion, and no copy of it is in the record. The motion court rescheduled the hearing for October 6, 1994.

A docket entry dated October 6, 1994, shows a motion for continuance was filed that date and denied. No copy of the motion is in the record. However, the docket entry states:

"[N]o just cause given for request. Mr. Madani does not appear. Motion for relief dismissed for failure to prosecute. Costs taxed to movant. Clerk to notify both attorneys and movant."

The next activity of record occurred October 19, 1994, when Appellant filed a "motion for reconsideration." No copy of it is in the record.

By a docket entry October 20, 1994, the motion court set the motion for reconsideration for hearing November 1, 1994. The entry states: "Mr. Madani and his attorney must appear."

The next activity of record occurred November 1, 1994. The docket sheet shows the prosecutor appeared in the motion court, as did Appellant's lawyer. We cannot discern from the entry whether Appellant appeared, but his brief states he did not. The motion court denied the motion for reconsideration.

The instant appeal is from the order of October 6, 1994, dismissing the postconviction proceeding.

Appellant's motion to vacate is a rambling, diffuse and argumentative manuscript consisting of conclusional allegations of malicious prosecution and prejudice against the trial judge, prosecutor and jury, proclamations of innocence by Appellant, rhetorical questions, accusations of perjury against the State's witnesses, and references to facts outside the trial record.

■ A person seeking postconviction relief is entitled to an evidentiary hearing only if: (1) he pleads facts, not conclusions, which, if true, would entitle him to relief, (2) the factual allegations are not refuted by the record, and (3) the matters complained of were prejudicial to him. *State v. Blankenship,* 830 S.W.2d 1, 16[27] (Mo. banc 1992).

■ Appellant's brief identifies no allegation of *fact* in his motion to vacate which, if true, would entitle him to relief. The argument in Appellant's brief makes only the conclusional averment that he "received ineffective assistance of counsel for not having all records and witnesses ready for trial." Such a claim is too vague to require an evidentiary hearing. *State v. Dudley,* 819 S.W.2d 51, 56[9] (Mo.App.S.D.1991).

■ We agree with Appellant that Rule 29.15(i) requires a motion court to issue findings of fact and conclusions of law "on all issues presented," whether or not an evidentiary hearing is held. However, that requirement implicitly assumes the motion for postconviction relief is sufficiently understandable to present one or more comprehensible claims. Where a motion for postconviction relief presents conclusional allegations, a motion court's failure to address such allegations with findings of fact and conclusions of law does not require reversal. *State v. Seddens,* 878 S.W.2d 89, 94[21] (Mo.App.E.D. 1994). Indeed, preparing findings of fact and conclusions of law on the desultory and abstruse grievances in Appellant's motion to vacate would have been a bewildering task comparable to untying a gordian knot.

■ As noted earlier,[4] Appellant was free on bond on the date the evidentiary hearing was to be held. The motion court could have reasonably assumed that if Appellant was genuinely interested in pursuing postconviction relief, he would appear at the hearing to assist counsel in clarifying the grounds for relief so the motion court could understand them, and to ensure that all relevant evidence was presented. Appellant's nonappearance for the evidentiary hearing, coupled with his nonappearance on his subsequent motion for reconsideration, bespeaks an intent to trifle with the court and postpone, as long as possible, his incarceration on the jail sentence. Appellant's prayer that we remand the postconviction proceeding for findings of fact and conclusions of law evinces a resolve to stall the judicial process until all possibilities of delay are exhausted.

Appellant's nonappearance for the evidentiary hearing is reminiscent of the behavior of the movant in *Forister v. State,* 849

---

4. Footnote 3, *supra.*

S.W.2d 606 (Mo.App.E.D.1993), where the movant informed the motion court that he did not want to be brought from prison to court for an evidentiary hearing and requested that neither his lawyer nor the court compel his attendance by writ. *Id.* at 607. The motion court dismissed the postconviction proceeding, finding the prisoner "had withdrawn the matter." *Id.* On appeal, the prisoner claimed the motion court erred by failing to issue findings of fact and conclusions of law per Rule 29.15(i).

Affirming the motion court, the Eastern District of this Court held the motion court acted within its discretion in dismissing the action for failure to prosecute. *Id. See also: Conley v. State,* 774 S.W.2d 863 (Mo.App. E.D.1989), where a prisoner refused to leave his cell and attend an evidentiary hearing on his motion for postconviction relief. The Eastern District of this Court held the motion court acted within its discretion in dismissing the postconviction proceeding for failure to prosecute. *Id.* at 864[3].

Because of the conclusional, opaque and labyrinthine character of Appellant's pro se motion, we hold the motion court did not err in failing to issue findings of fact and conclusions of law, and because of Appellant's disinterest in attending hearings in the motion court, we hold the motion court did not err in dismissing the postconviction proceeding. The order of dismissal is affirmed.

SHRUM, C.J., and PARRISH, J., concur.

