**STATE of Missouri, Respondent,**

v.

**Nathaniel L. MAY, Appellant.**

**No. WD 58949.**

Missouri Court of Appeals,
Western District.

March 5, 2002.

---

Kent Denzel, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Stacy L. Anderson, Asst. Atty. Gen., Jefferson City, for respondent.

Before ULRICH, P.J., BRECKENRIDGE and ELLIS, JJ.

ULRICH, Presiding Judge.

Nathaniel L. May appeals from his conviction following a jury trial for possession of a controlled substance with the intent to deliver, section 195.211, RSMo 1998, and his sentence of five years imprisonment. As his sole point on appeal, Mr. May contends that the trial court erred by denying his motion for judgment of acquittal because the State failed to make a prima facie case. Mr. May claims that no evidence was presented that he possessed marijuana or that he intended to deliver or assist in the delivery of marijuana. The judgment of conviction is reversed.

## Facts

On March 2, 1999, St. Joseph Police Detective Jeff Wilson, assigned to the Buchanan County Drug Strike Force, received a telephone call from the manager of the Oak Ridge apartment complex about suspected illegal drug activity occurring within the apartment complex. Later, after meeting with the manager of the complex, Detective Wilson contacted his supervisor on the Strike Force, Sergeant Howard Judd, and requested authorization for a "knock and talk" operation. Shortly thereafter, Sergeant Judd and two other officers accompanied Detective Wilson to Faith Mabion's apartment. Detective Wilson knocked at the apartment door. When Ms. Mabion opened the door, Detective Wilson, Sergeant Judd and another officer smelled the odor of burnt marijuana emanating from the apartment. Detective Wilson identified himself as a police officer. He told Ms. Mabion that he had information about possible illegal drug activity within the apartment and asked for permission to search her apartment. While standing in the doorway, Detective Wilson was able to observe seven other people in the apartment, including Ms. Mabion's nine-year-old daughter. Immediately upon seeing the police, the occupants sat in an upright position of attention, fidgeted, and moved about the apartment.

Ms. Mabion asked Detective Wilson to explain again what he wanted, and he again told her about the information the police had received concerning drug use within the apartment, adding that he could smell the order of burnt marijuana coming from the apartment, and he asked for consent to search. Ms. Mabion refused to grant her consent and added that the odor was incense, not marijuana. Ms. Mabion then asked Detective Wilson if he had a search warrant and he stated that he did not. The other people in the room then began yelling at Ms. Mabion to require a search warrant before entry was permitted. Sergeant Judd testified that at one point Mr. May led a couple of other occupants in a loud chant of "search warrant, search warrant, search warrant." At the same time, several of the occupants were moving around the room. Detective Wilson could see all but one person in the room from where he was standing at the door.

Mr. May was seen siting on a couch in the living room when the door to the apartment was opened. As Detective Wilson spoke to Ms. Mabion, Mr. May quickly stood up, turned around, and bent over lifting the seat cushion he had been sitting on with one hand while placing his other hand underneath the cushion. Detective Wilson could not see from where he was standing whether Mr. May had anything in his hand. Mr. May then walked across the room toward the kitchen area, acknowl-

edging Detective Wilson by his first name at the door. As Mr. May reached the kitchen, he turned around and returned to the same couch on which he had been sitting and sat on the floor in front of it.

Mark Wilson walked into the view of the police officers at the apartment door from the dining area and yelled at Ms. Mabion several times to require the officers to get a search warrant, laughing as he did so. At this point, Mr. May got up from the floor where he was seated and joined Mark Wilson in the kitchen. Detective Wilson testified that he could only see one of Mr. May's hands as Mr. May walked into the kitchen and that the hand was empty. When in the kitchen, Mr. May and Mark Wilson went to the refrigerator and opened the door, blocking the detective's view of them. Both men were seen bending over several times as if they were getting something out of the refrigerator, but neither of them was seen drinking or putting anything into their mouths. Additionally, Detective Wilson testified that neither man had anything in his hands after the refrigerator door closed. No other occupants of the apartment entered the kitchen area while Detective Wilson spoke with Ms. Mabion.

After Ms. Mabion refused her consent to search the apartment, Detective Wilson told Ms. Mabion that the apartment door would remain open so the other officers could see inside. Detective Wilson, at the direction of Sergeant Judd, left to obtain a warrant. While Detective Wilson was obtaining the warrant, Sergeant Judd directed the other officers to enter the apartment and, for the safety of the law enforcement officers, to watch the people present. During the one to two hour wait for Detective Wilson's return, the officers in the apartment observed the occupants' movements and accompanied them to the kitchen for water or to the bathroom.

When Detective Wilson returned with a search warrant, he began his searching in the kitchen area. In the kitchen, he discovered a large trash bag containing twenty-one individually wrapped bags of marijuana totaling 45.45 grams, and a package of forty-three empty "baggies." This large trash bag was located on the floor within arm's reach of the refrigerator. According to Detective Wilson, dealers commonly use plastic bags to package illegal drugs. Marijuana is a drug packaged in this manner for street sales, Detective Wilson said.

In the living room, beneath the seat cushion that Mr. May had been seen reaching under, Detective Wilson and the officers found two bags containing a total of 50.05 grams of marijuana. The officers also found, in plain view, some small marijuana joints, or "roaches," in a bottle cap on the glass table. This was the table, according to the detective, that people in the apartment had been going back and forth to. In the bedroom, the officers found a small leaf or bud of marijuana in Ms. Mabion's shoe. The officers also seized $1,270 in cash from Mark Wilson, whom Detective Wilson said did not give Sergeant Judd a legitimate reason for his possession of that amount.

When Detective Wilson began his search of the other areas within the apartment, another officer notified him that Mr. May wanted to speak to him. The detective went to a room at the rear of the apartment with Mr. May where Mr. May asked if he would still be in trouble if someone else admitted ownership of the drugs. Detective Wilson responded that he had seen Mr. May put his hand under the seat cushion and knew the marijuana that was under it to be Mr. May's and that someone else would have to convince him that they owned that marijuana. Mr. May did not deny ownership.

Mr. May also spoke to Sergeant Judd while at the apartment. Mr. May also asked the sergeant whether he would be released if one of the other people present told the sergeant that the marijuana was his. Like Detective Wilson, Sergeant Judd also told Mr. May that he was the one who put the marijuana under the seat cushion and that it belonged to him. Again, Mr. May did not deny ownership of the drugs. Mr. May told Sergeant Judd that he did not use marijuana to the same extent that he had in the past, but that marijuana was in his system due to the "secondhand smoke" in the apartment. Mr. May also said that he could convince the owner of the marijuana to come forward and give a statement.

Soon after Detective Wilson's conversation with Mr. May, the police arrested all of the occupants of the apartment and transported them to the police station. Mr. May wanted to speak with Detective Wilson again. He told the detective essentially what he had told him while in the apartment, that someone else would admit ownership of the marijuana. He asked if that occurred whether that would clear him.

Mr. May also had another conversation with Sergeant Judd, which was essentially the same as the previous conversations he engaged in with the officers.

Following a jury trial, Mr. May was convicted of possession of a controlled substance with the intent to deliver and was sentenced to five years imprisonment upon a finding by the sentencing judge that appellant was a prior drug offender. This appeal followed.

### Sufficiency of the Evidence

As his sole point on appeal, Mr. May contends that the trial court erred in denying his motion for judgment of acquittal because the State failed to make a prima facie case. He claims no evidence was presented that he possessed marijuana or that he intended to deliver or assist in the delivery of marijuana. He argues that the trial court's error denied him due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and Article 1, § 10 of the Missouri Constitution.

The State asserts that Mr. May has not preserved any error with respect to his motion for judgment of acquittal, citing Mr. May's failure to make a motion for judgment of acquittal at the close of all the evidence. Mr. May counters, however, claiming that error with respect to his motion for judgment of acquittal is preserved because his motion for new trial alleges that the evidence was "insufficient to convict."

The State is correct in its contention that Mr. May did not adequately preserve the claimed error. First, Mr. May waived any claim of error in the denial of his motion for judgment of acquittal at the close of the State's case when he subsequently presented evidence on his own behalf. *State v. Madani,* 910 S.W.2d 362, 364 (Mo.App. S.D.1995). Additionally, Mr. May did not make a motion for judgment of acquittal at the close of all the evidence. While Mr. May did allege in his motion for new trial that "[t]here was insufficient evidence as a matter of law to support the finding of guilty" and that "[t]here was insufficient evidence as a matter of law to show that the Defendant intended to distribute marijuana," neither point sets forth in detail and with particularity the assignment of error. This failure to comply with Rule 29.11(d) precludes consideration of the point. *State v. Ginnery,* 617 S.W.2d 117, 119 (Mo.App. S.D.1981). Nonetheless, in Mr. May's contention that the State failed to present sufficient evidence

to make a prima facie case that he possessed a controlled substance with intent to distribute, the claimed error would constitute plain error affecting substantial rights within the meaning of Rule 30.20. *State v. Thomas,* 595 S.W.2d 325, 328 (Mo. App. S.D.1980). The State, in order to convict, is required to prove beyond a reasonable doubt, each and every element of the crime charged. *State v. Wurtzberger, No. WD 56473,* 2000 WL 817706 at *7 (Mo.App. W.D. Jun. 27, 2000). Where the evidence presented in a criminal case fails to make a prima facie case and is, therefore, insufficient to sustain a conviction, plain error affecting the defendant's substantial rights occurs resulting in manifest injustice. *Id.* In a criminal case, the defendant has a constitutional due process right that compels the State to present sufficient evidence from which any rational trier of fact could find the essential elements of the crime charged beyond a reasonable doubt. *Id.* The State's failure to present sufficient evidence involves substantial rights, and if the evidence is deficient, plain error review is appropriate. *Id.;* Rule 30.20. The court exercises its discretionary authority, and Mr. May's claim is reviewed for plain error.

■ In determining the sufficiency of the evidence, all evidence and inferences reasonably drawn from the evidence are viewed in the light most favorable to the verdict, and contrary evidence and inferences are disregarded. *State v. Powell,* 973 S.W.2d 556, 558 (Mo.App. W.D.1998); *State v. West,* 939 S.W.2d 399, 401 (Mo. App. W.D.1996). Review of the sufficiency of evidence is limited to determination of whether the evidence was sufficient for reasonable persons to have found the defendant guilty as charged beyond a reasonable doubt. *Id.* Credibility of witnesses and inconsistencies in testimony are for the jury to consider. *Id.*

■ The State charged Mr. May with possession of a controlled substance with the intent to deliver and submitted that charge to the jury on an accomplice liability theory. Missouri has eliminated the distinction between principals and accessories. *Wurtzberger,* 2000 WL 817706, at *11. All persons who act in concert to commit a crime are equally guilty. *Id.* An accomplice is one who, before or during the commission of a crime, intentionally and knowingly aids or encourages the commission of a crime, and an accomplice is criminally responsible for that offense. § 562.041.1(2); *State v. Sensabaugh,* 9 S.W.3d 677, 679 (Mo.App. E.D.1999). No particular physical act is necessary for a finding of guilt; mere encouragement is enough. *Sensabaugh,* 9 S.W.3d at 679 (citing *State v. Richardson,* 923 S.W.2d 301, 317 (Mo. banc 1996)). "Encouragement," for this purpose, is the equivalent of conduct that by any means countenances or approves the criminal actions of another. *Id.* (citing *Richardson* at 318). To convict a person charged with aiding and abetting the commission of a crime, evidence must be substantiated that the defendant associated himself with the venture or participated in the crime in some manner. *Id.* The evidence need not show that the defendant personally committed every element of the offense; encouragement is enough. *Id.*

■ A person who acts with another with common intent and purpose in the commission of a crime is guilty, whether he is a principal or merely abets the crime. *Id.* Any evidence that shows affirmative participation in aiding the principal to commit the crime is sufficient to support a conviction. *Id.*

For the State to convict Mr. May of

violating section 195.211,[1] under a theory of accomplice liability, it must prove the commission of the elements of the crime charged by a principal with affirmative participation by Mr. May to aid the principal in the commission of the crime.

To sustain Mr. May's conviction as an accomplice in the crime of possession of a controlled substance with intent to distribute, the State must prove that either he or Mr. Wilson (1) consciously and intentionally possessed the controlled substance, either actually or constructively; that (2) they had an awareness of the presence and nature of the substance (*State v. Purlee*, 839 S.W.2d 584, 587 (Mo. banc 1992); *State v. White*, 28 S.W.3d 391, 398 (Mo.App. W.D.2000)); and that Mr. May affirmatively participated to aid Mr. Wilson in the commission of the crime.

 The State is not required to show actual, physical possession of the substance to establish possession, but may show constructive possession by circumstantial evidence. *Powell*, 973 S.W.2d at 558; *State v. Shinn*, 921 S.W.2d 70, 72 (Mo.App. E.D.1996). Constructive possession will suffice to support a conviction when other facts support an inference of defendant's knowledge of the presence of the substance. *Powell*, 973 S.W.2d at 558–59. The State must present some incriminating circumstance that implies the accused knew of the presence of the drugs and the same was under his control. *Id.*

Mr. May does not argue that he did not have an awareness of the presence and nature of the contraband marijuana confiscated by the officers. He concedes that he "admitted prior use of marijuana and [that he] was in a room containing an odor of burnt marijuana [and that] he knew that there was or had been marijuana in the apartment." Reply Brief for Appellant at

7. Instead, Mr. May's argument on appeal attacks the theory that his awareness of the presence and nature of the marijuana, with the other evidence presented, including his association with Mr. Wilson, would satisfy both elements (1) and (3) listed above.

 Mr. May argues that he did not have exclusive access and control of the premises where the marijuana was discovered and that the State did not "establish control in anyway." Joint control over the area where the drugs were found will not preclude a showing of control, so long as further evidence connects the defendant with the illegal substances. *Powell*, 973 S.W.2d at 559. Additional evidence that will support a conviction in a joint possession case includes: (1) the presence of large quantities of the substance at the place where appellant is arrested, (2) conduct and statements made by the defendant; *State v. Keller*, 870 S.W.2d 255, 260 (Mo.App. W.D.1994); (3) being in close proximity to drugs or drug paraphernalia in plain view of the police, *State v. Jackson*, 576 S.W.2d 756, 757 (Mo.App. E.D. 1979); and (4) consciousness of guilt, *State v. Dreiling*, 830 S.W.2d 521, 524–25 (Mo. App. W.D.1992). The totality of the circumstances is considered in determining whether sufficient additional incriminating circumstances have been proved. *Purlee*, 839 S.W.2d at 589;

In both *Shinn* and in *Powell*, the defendant was observed making "a motion reasonably interpreted as an effort to move and hide the contraband." *Powell*, 973 S.W.2d at 559. In *Shinn*, the defendant was seen "bending forward in the car 'as if to hide something.'" *Shinn*, 921 S.W.2d at 72. Likewise, in *Powell*, defendant was observed "moving his foot on the floor-

---

**1.** All statutory references are to RSMo 1998 unless otherwise indicated.

board back toward the passenger seat." *Powell*, 973 S.W.2d at 559.

As in *Shinn* and in *Powell*, Mr. May's actions can be reasonably interpreted as an effort to move and hide contraband, a significant incriminating fact. When Ms. Mabion opened the door to her apartment to law enforcement officers, Mr. May was sitting on the couch in the living room. Upon seeing the officers, Mr. May quickly stood up, turned around, bent over, lifted with one hand the seat cushion of the couch where he had been seated and placed his other hand under the cushion. A total of 50.05 grams of marijuana were found in two bags under the cushion, an amount in excess of the statutory minimum for possession under section 195.202. Thus, sufficient additional evidence of possession and control was presented for reasonable jurors to conclude that Mr. May was in constructive possession of the marijuana found under his seat cushion.

Sufficient additional evidence to connect Mr. May to the marijuana that was found in the kitchen was not presented, however. As mentioned, a trash bag containing 45.45 grams of marijuana was found in the kitchen. Six adults and one child were observed in the apartment by law enforcement authorities. When Mark Wilson walked toward the kitchen, Mr. May got up from where he was seated and joined Mark Wilson in the kitchen. While in the kitchen, the two men opened the refrigerator door, partially obstructing the detective's view of them. Both men were seen bending over several times as if they were getting something out of the refrigerator. Neither Mr. May nor Mark Wilson was seen drinking or putting anything in his mouth. Also, neither had anything in his hands when finally the door to the refrigerator was closed. The officers later discovered the trash bag containing marijuana within an arms reach of the refrigerator. No evidence suggests that the movement of the people observed in the apartment was inhibited before the police arrived.

The evidence of Mr. May's activity in the kitchen is not sufficient to prove that he had control of the marijuana found there. *See State v. Wiley*, 522 S.W.2d 281, 292 (Mo. banc 1975). Neither does the evidence establish that Mr. Wilson possessed the 45.45 grams of marijuana found in the kitchen with the intent to distribute it or that Mr. May aided Mr. Wilson in the commission of the offense.

Having found that insufficient evidence was presented to link Mr. May to the marijuana found in the kitchen, the evidence that remains to support a conviction is the 50.05 grams of marijuana found under the seat cushion, and the $1,270 found on Mark Wilson's person. Although Mr. May possessed 50.05 grams of marijuana, an amount in excess of the statutory minimum for possession under section 195.202, the large amount of cash that was discovered, purportedly evidence of the sale of contraband drugs, was not in Mr. May's possession but on Mark Wilson's person. Viewing this evidence in the light most favorable to the verdict, insufficient evidence was presented for reasonable jurors to find that Mr. May intended to deliver or aid in the delivery of the 50.05 grams of marijuana.

The State contends that even if this court finds insufficient evidence to sustain Mr. May's conviction for possession of a controlled substance with the intent to deliver, the proper remedy would not be to release Mr. May but to enter a conviction under section 195.202, as the evidence supports that Mr. May possessed marijuana in excess of 35 grams.

Although the evidence in this case was sufficient to support a finding that Mr.

May possessed marijuana in excess of 35 grams in violation of section 195.202, a judgment of conviction cannot be entered under section 195.202. Pursuant to the verdict finding instruction submitted in this case, the jury found that Mr. May *or Mr. Wilson* possessed *5 grams or more* of marijuana. Such finding does not ratify essential elements of section 195.202, i.e., that *Mr. May* possessed marijuana *in excess of 35 grams*. Section 195.202 is not a lesser-included offense of section 195.211. *State v. Kriebs,* 978 S.W.2d 460, 468 (Mo. App. S.D.1998).

Mr. May was charged with possession of a controlled substance with intent to distribute, section 195.211, and not with possession of a controlled substance in violation of section 195.202. Application of the law compels this court to reverse Mr. May's conviction. Therefore, Mr. May's conviction for possession with intent to distribute, section 195.211, is reversed.

BRECKENRIDGE and ELLIS, JJ., concur.