**STATE of Missouri, Respondent,**

v.

**Joseph HOOSIER, Appellant.**

No. 28606.

Missouri Court of Appeals,
Southern District,
Division One.

Sept. 19, 2008.

Motion for Rehearing or Transfer
Denied Oct. 9, 2008.

Application for Transfer Denied
Nov. 25, 2008.

---

Matthew Ward, Columbia, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen. & Cory Lee Atkins, Jefferson City, MO, for Respondent.

Before BARNEY, P.J., RAHMEYER, J., and LYNCH, C.J.

PER CURIAM.

Joseph Hoosier ("Appellant") appeals his conviction by a jury for one count of the Class B felony of distribution of a controlled substance, a violation of section 195.211.[1] Following a jury trial, Appellant was sentenced by the trial court to fifteen years in the Missouri Department of Cor-

---

1. All statutory references are to RSMo 2000.

rections with the sentence to run "concurrent with any existing sentence." In his sole point relied on, Appellant asserts the trial court erred in overruling his motion for judgment of acquittal because there was insufficient evidence to prove he " 'acted together with or aided Ramone Hicks [("Mr.Hicks")] in committing the offense of distribution of a controlled substance.' "

Viewing the evidence in the light most favorable to the jury's verdict, *State v. Hall*, 236 S.W.3d 698, 699 (Mo.App.2007), the record reveals that on January 9, 2006, Officer Charles Vienhage ("Officer Vienhage"), an undercover narcotics officer with the Springfield Police Department, arranged to purchase crack cocaine from Mr. Hicks. Officer Vienhage had called Mr. Hicks's cell phone and arranged to meet him in the parking lot of Dillon's grocery store. Officer Vienhage, who was under surveillance by other officers and was wearing a digital recorder, parked at Dillon's and awaited Mr. Hicks's arrival. After approximately twenty-five minutes, Mr. Hicks approached Officer Vienhage's Ford Explorer, opened the passenger side door of the vehicle, and got inside. Appellant, who Officer Vienhage did not know, got into the backseat of the Explorer behind Officer Vienhage.

After Mr. Hicks and Appellant were in the vehicle, Appellant noticed a Cadillac with a "for sale" sign on it driving past them. Appellant instructed Officer Vienhage to follow the vehicle so that he could get the phone number from the sign. Officer Vienhage followed the Cadillac and honked his horn, but was unable to get the vehicle to stop. Officer Vienhage continued driving and Mr. Hicks instructed him to stop on Stanford Street. When the parties were on Stanford Street, Mr. Hicks took out a plastic baggie containing a white substance and placed it on the front

floorboard of the vehicle.[2] Officer Vienhage asked how much the baggie was and Mr. Hicks replied, "$30.00." Officer Vienhage stopped the vehicle, gave $30.00 to Mr. Hicks, and Mr. Hicks and Appellant exited the vehicle. Officer Vienhage testified the men walked south through a field toward University Street where Mr. Hicks lived. Officer Vienhage testified that Appellant did not speak at any time during the drug transaction and he maintained a "calm" demeanor throughout the drug purchase.

At trial, Officer Vienhage testified that Appellant's presence at the drug transaction concerned him because he did not know Mr. Hicks was bringing anybody along and Officer Vienhage worried he was "potentially being robbed or assaulted...." Officer Vienhage related he generally did "not ever want anyone to sit behind [him], because it's an ambush position, and you're not able to observe that person very well." He related he was specifically "very uncomfortable due to the fact that ... in [his] training [he] learned to try to always avoid having someone sit in the back seat of a car during a drug transaction."

Officer Kent Shipley ("Officer Shipley"), who was performing surveillance on the drug purchase and listening to the transaction from his own vehicle, was parked near Mr. Hicks's apartment when Appellant and Mr. Hicks exited the vehicle.

Officer Shipley testified that often drug dealers bring another individual along with them "[e]ither as protection ... or possibly to rob [the purchaser or] undercover officer." He stated often the other individual would be "there to rob the individual ... protect the dope ... could be assisting the other individual with the buy."

---

**2.** The white substance in the baggie was later   determined to be crack cocaine.

Appellant did not testify at trial. At the close of all the evidence, the jury found Appellant guilty of distribution of a controlled substance. He was thereafter sentenced as set out above. This appeal followed.

In his sole point relied on, Appellant maintains the trial court erred in overruling his motion for judgment of acquittal "and in entering judgment and sentence on the jury's guilty verdict," because there was insufficient evidence "from which a juror could find beyond a reasonable doubt that [Appellant] 'acted together with or aided [Mr.] Hicks in committing the offense of distribution of a controlled substance' because [Appellant] was merely present at the scene of the drug transaction and did not participate in it."

"We will affirm a trial court's denial of a motion for judgment of acquittal if, at the close of evidence, there was sufficient evidence from which reasonable persons could have found the defendant guilty of the charged offense." *State v. Hunter*, 179 S.W.3d 317, 320 (Mo.App.2005). " 'We review the denial of a motion for acquittal to determine if the State adduced sufficient evidence to make a submissible case.' " *State v. Howard*, 973 S.W.2d 902, 906 (Mo. App.1998) (quoting *State v. Foster*, 930 S.W.2d 62, 63 (Mo.App.1996)). " 'The State may prove its case by presenting either direct or circumstantial evidence connecting the defendant to each element of the crime.' " *State v. Fraga*, 189 S.W.3d 585, 586 (Mo.App.2006) (quoting *State v.*

*Howell*, 143 S.W.3d 747, 752 (Mo.App. 2004)). "[C]ircumstantial evidence is given the same weight as direct evidence and the jury is free to make reasonable inferences from the evidence presented." *State v. Brooks*, 158 S.W.3d 841, 848 (Mo.App. 2005). " 'Our standard of review is whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt.' " *State v. Smith*, 185 S.W.3d 747, 758 (Mo.App.2006) (quoting *State v. Wright*, 998 S.W.2d 78, 81 (Mo.App.1999)).

"The court must examine the elements of the crime and consider each in turn; reviewing the evidence in the light most favorable to the judgment, disregarding any contrary evidence, and granting the State all reasonable inferences from the evidence." *Id.* "We defer to the superior position of the jury to assess the credibility of witnesses and the weight and value of their testimony." *Id.* It is settled law that in order to convict a defendant the State "is required to prove beyond a reasonable doubt, each and every element of the crime charged." *State v. May*, 71 S.W.3d 177, 183 (Mo.App.2002).

Here, for the State to convict Appellant of violating section 195.211, under a theory of accomplice liability, it was required to prove Mr. Hicks distributed crack cocaine and Appellant, with the purpose of promoting or furthering Mr. Hicks's act of distribution, acted together with or aided Mr. Hicks in committing that offense.[3] *See State v. Wurtzberger*, 40

---

**3.** Jury Instruction No. 5, the verdict directing instruction, sets out:

A person is responsible for his own conduct and he is also responsible for the conduct of another person in committing an offense if he acts with the other person with the common purpose of committing that offense or if, for the purpose of committing that offense, he aids or encourages the other person in committing it.

If you find and believe from the evidence beyond a reasonable doubt:

First, that on or about the 9th day of January, 2006, ... [Mr.] Hicks knowingly distributed cocaine base, a controlled substance, to [Officer] Vienhage, and

Second, that [Appellant] or [Mr.] Hicks knew or was aware that the substance delivered was cocaine base, a controlled substance,

S.W.3d 893, 895 (Mo. banc 2001); § 195.211.

■ "The law of accessory liability emanates from statute, as construed by the courts." *State v. Barnum*, 14 S.W.3d 587, 590 (Mo. banc 2000). Section 562.041.1(2) provides that a "person is criminally responsible for the conduct of another when ... [e]ither before or during the commission of an offense, with the purpose of promoting the commission of an offense he aids or agrees to aid or attempts to aid such other person in planning, committing or attempting to commit the offense." "This subsection is designed to make individuals who could not be guilty of a crime solely on the basis of their own conduct, guilty nonetheless as an accessory." *Barnum*, 14 S.W.3d at 590. "Missouri has eliminated the distinction between principals and accessories. All persons who act in concert to commit a crime are equally guilty." *May*, 71 S.W.3d at 183 (internal citation omitted); *see Wurtzberger*, 40 S.W.3d at 895.

■ "To convict a person charged with aiding and abetting the commission of a crime, evidence must be substantiated that the defendant associated himself with the venture or participated in the crime in some manner. The evidence need not show that the defendant personally committed every element of the offense...." *May*, 71 S.W.3d at 183; *see also State v. Townsend*, 810 S.W.2d 726, 727 (Mo.App. 1991).

■ "While mere presence at a crime scene, considered alone or in combination with a refusal to interfere, is insufficient to support a conviction, 'the broad concept of 'aiding and abetting' plainly encompasses acts that could be construed as 'encouragement' or its derivation.'" *Barnum*, 14 S.W.3d at 591 (quoting *State v. Richardson*, 923 S.W.2d 301, 317 (Mo. banc 1996)). "'Encouragement' for this purpose, is the equivalent of conduct that by any means countenances or approves the criminal actions of another." *May*, 71 S.W.3d at 183. "In fact, associating with those that committed the crime before, during, or after its occurrence, acting as part of a show of force in the commission of the crime, [or] attempting flight from the crime scene ... are all factors which may be considered." *Barnum*, 14 S.W.3d at 591.

In the present matter, Appellant accompanied Mr. Hicks to the drug transaction with Officer Vienhage. Appellant entered Officer Vienhage's vehicle in a "calm" manner and sat in the back seat. It is a fair inference that Appellant observed and heard the discussions relating to the drug transaction, including the fact that the contraband was being sold for $30.00, and given the confined space of the vehicle it is also reasonable to infer that Appellant witnessed the entire drug transaction. Appellant did not attempt to stop the transaction nor did he show signs of surprise that drugs were being sold in the vehicle. When the transaction was over, Appellant left with Mr. Hicks. "Among other things, circumstances indicative of aiding and

then you are instructed that the offense of distribution of a controlled substance has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:

Third, that with the purpose of promoting or furthering the commission of that distribution of a controlled substance, [Appellant] acted together with or aided [Mr.] Hicks in committing the offense,

then you will find [Appellant] guilty of distribution of a controlled substance.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find [Appellant] not guilty of that offense.

abetting are presence at the scene of the crime, flight therefrom and association with others involved before, during and after the commission of the crime." *State v. Brown,* 924 S.W.2d 3, 5 (Mo.App.1996). From these facts, a reasonable jury could infer from the circumstantial evidence that Appellant knew Mr. Hicks was going to sell drugs to Officer Vienhage and he "associated himself with the venture . . . ." *May,* 71 S.W.3d at 183.

Further, the State urged in response to Appellant's motions and in its brief, that Appellant's association with Mr. Hicks in relation to the drug transaction was "a show of force in the commission of the crime . . . ." *Barnum,* 14 S.W.3d at 591. We agree. Here, there was testimony from Officer Vienhage that he was concerned by Appellant's unexpected appearance at the arranged drug purchase because, in his experience, oftentimes drug dealers brought companions with them either as protection or as help in robbing or assaulting the buyer. He further testified that the fact that Appellant entered the vehicle and sat directly behind him in the so-called "ambush position" was especially troubling. Officer Vienhage testified that he was trained "to always avoid having someone sit in the back seat of a car during a drug transaction," because of the potential risks involved. Likewise, Officer Shipley testified that drug dealers bring other individuals with them to protect themselves, protect the drugs, to assist as needed in the drug transaction or to rob the buyers. Based on the foregoing testimony, the jury could reasonably have believed that Appellant accompanied Mr. Hicks to the drug transaction as protection or help in negotiating the drug transaction. *See Townsend,* 810 S.W.2d at 727 (holding the defendant was guilty of being an accomplice where he accompanied another man into a service station and stood at his "side at the counter in front of [the] cash register during the robbery impressing a show of force and left the store with [him] . . . .").

As previously related, the evidence establishes considerably more than mere presence by Appellant at the scene of the crime. Based on the evidence, the jury could have quite logically inferred that Appellant was aware of Mr. Hicks's plan to sell drugs to Officer Vienhage; that he was part of that plan and participated in it; and that his participation was an affirmative act which included his presence as a show of force. *See Barnum,* 14 S.W.3d at 591. There was sufficient evidence under which the jury could have found Appellant guilty of the crime of distribution beyond a reasonable doubt. The trial court did not err in denying Appellant's motion for judgment of acquittal. Point denied.

The judgment of the trial court is affirmed.