STATE of Missouri, Respondent,

v.

Duone T. HAIRSTON, Appellant.

No. SD 28909.

Missouri Court of Appeals,
Southern District,
Division One.

Nov. 6, 2008.

Matthew Ward, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Mary H. Moore, Jefferson City, for respondent.

ROBERT S. BARNEY, Judge.

Duone T. Hairston ("Appellant") appeals his conviction following a jury trial for one count of the Class B felony of possession of a controlled substance with intent to distribute, a violation of section 195.211.[1]  Appellant was sentenced to ten years in the Missouri Department of Corrections.  In his sole point relied on, Appellant challenges the trial court's denial of his motion for judgment of acquittal because there was insufficient evidence adduced at trial to support his conviction.  We affirm the judgment of the trial court.

Viewing the evidence in the light most favorable to the jury's verdict, *State v. Hall*, 236 S.W.3d 698, 699 (Mo.App.2007), the record reveals that on July 29, 2006, Chris Rataj ("Detective Rataj"), a narcotics detective with the Sikeston Department of Public Safety, was performing surveillance on the apartment complex where

---

1. Unless otherwise set out, statutory references are to RSMo Cum.Supp.2004.

Appellant resided. Detective Rataj was parked in an unmarked vehicle in the parking lot of a nearby church when he saw Appellant exit the apartment building carrying a black garbage bag. Detective Rataj observed Appellant walk across the alleyway separating the apartment complex and the church, lift the lid on a large dumpster, and throw the black garbage bag inside the dumpster. Appellant then re-entered the apartment complex. Detective Rataj waited approximately ten minutes before retrieving the black garbage bag from the dumpster which was otherwise empty.

Later, at the station, Detective Rataj opened the garbage bag and found the following items inside: mail addressed to Appellant; a pack of rolling papers; some torn plastic baggies; marijuana seeds; and stems from marijuana plants. Detective Rataj testified at trial that the plastic bags he found in the bag were "corner baggies" or "sandwich baggies that had the corners removed . . ." which are items known to be used in the "distribution" or "packaging" of marijuana. He stated that corner baggies "indicate[ ] a distribution where [the drug is] repackaged from one bag to another bag." He stated that "[s]maller street dealers" use these kinds of sacks to sell small amounts of marijuana at a time. He also related that when drug distributors purchase large amounts of marijuana "lots of time[s] it's got seeds and stems and stuff you can't smoke. The customer doesn't want to buy it with the seeds and stems in it. . . ." He stated the dealer then "usually has to go through and pick out the seeds and stems, more or less clean it up and repackage it for sale." Based on the items confiscated from the garbage bag, Detective Rataj was granted a search warrant to search Appellant's apartment.

A search warrant was served on Appellant's apartment on July 31, 2006. During the search of Appellant's apartment, Detective Rataj and his colleague discovered corner baggies in the kitchen trash can; "a roll of plastic bags on top of the refrigerator . . .;" and a police scanner. Detective Rataj stated the plastic bags found in Appellant's kitchen were not the standard "plastic zip lock bags" that "everybody" has in their home. He stated these bags "are a little different because they are sealed at the bottom and they are open at the top" such that the top has to be tied in order to keep it closed. Regarding the police scanner, which was on when the officers arrived, it was apparently programmed to three specific frequencies: the published police frequency, the published fire department frequency, and the unpublished police frequency used by officers to "communicate between car to car and for search warrants and things like that." Detective Rataj testified that police scanners are often used by drug dealers so that they "know when the police are coming . . ." and they can get "a better heads up" of police activity. Detective Rataj testified they did not find any weapons in Appellant's apartment, but he was not surprised given that most drug dealers know that being caught with drugs and guns is a federal crime and they "try to steer away from doing federal time."

After searching Appellant's apartment the officers searched the common laundry area which was located in the basement of a separate building approximately "ten, fifteen feet" behind Appellant's apartment. While searching the laundry room, Detective Rataj saw "in between two of the rafters in the ceiling . . . there was a piece of Styrofoam that just didn't look like it was meant to be there." When Detective Rataj removed the piece of foam he saw a bag similar to the bags found in Appellant's apartment which contained a "green, leafy substance." The bag was later test-

ed and found to contain 24.74 grams of marijuana.[2]

Appellant was arrested and taken to the police station where he was advised of his *Miranda*[3] rights. Appellant waived his right to remain silent and agreed to be interviewed by Detective Rataj and another officer, Charles Newell.[4] Detective Rataj told Appellant the officers had found his "hidey hole" and had "got the green out of there." He further told Appellant that he did not think Appellant needed "to go away forever for selling weed," but Appellant needed to be honest with the officers so that they could help him. At that time the following exchange took place:

Detective Rataj: Start off with the hidey hole.

Appellant: What about it?

Detective Rataj: What up with that?

Appellant: In the basement.

Detective Rataj: Where at?

Appellant: A whole bunch of that Styrofoam.

Detective Rataj: Where was your dope at?

Appellant: It wasn't nothing but like a sack down there.

After telling Detective Rataj that he did not smoke weed, Detective Rataj asked Appellant, "Why are you selling weed? Hey, you had a job...." Appellant did not deny selling marijuana; instead, he replied that he was working for a temporary agency and his girlfriend "basically pay[s] everything" for him. Detective Rataj continued his questioning:

Detective Rataj: So what are you doing with all the money you making from selling weed?

Appellant: I am being honest. My girl paying my bills.

Detective Rataj: What are you doing with all the money you got from selling weed then?

Appellant: That is my money.

* * *

Detective Rataj: I am asking where all of the money you been selling weed ... go to. If you ain't smoking it up. You ain't cracking are you?

Appellant: No.

Detective Rataj: I didn't figure that. Snorting?

Appellant: No. I don't do no drugs. I used to smoke weed.

* * *

Detective Rataj: You still get anything from Eugene or is that bridge burnt?

Appellant: I don't know. He stays up town now. I don't hardly see him....

* * *

Detective Rataj: Has he got any weight or is he just nickel and diming?

Appellant: Weight.

Detective Rataj: What is the most you ever seen?

Appellant: A half pound.

Detective Rataj: Anybody else?

Appellant: Everybody sell weed.

---

**2.** Detective Rataj testified at trial that this amount of marijuana would have made two or three "dime bags" of marijuana or ten to fifteen smaller two or three gram bags of marijuana.

**3.** *Miranda v. Arizona*, 384 U.S. 436, 455, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**4.** An audio recording of this interview was made at the time of the interview and a transcript was read to the jury during trial; however, neither the actual audio recording nor the transcript have been provided to this Court in the record on appeal. Accordingly, we defer to Detective Rataj's reading of the interview transcript into the record at trial for this portion of our fact recitation.

A jury trial was held on March 6, 2007. At the close of evidence, Appellant was convicted by the jury of possession of a controlled substance with intent to distribute. On December 12, 2007, Appellant was sentenced by the trial court to ten years in prison as previously set out. This appeal followed.

In his sole point relied on, Appellant asserts the trial court erred in denying his motion for judgment of acquittal and in entering judgment and sentence against him for possessing marijuana with intent to distribute. Appellant urges there was "insufficient evidence from which a juror could find beyond a reasonable doubt that [Appellant] had any intent to distribute the marijuana found in the basement of the apartment complex." In that Appellant only challenges the submission of evidence on the issue of intent to distribute marijuana, we shall only address that issue in this opinion.

We review the denial of a motion for acquittal to determine if the State adduced sufficient evidence to make a submissible case. *State v. Christian,* 184 S.W.3d 597, 602 (Mo.App.2006). Our standard of review is whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. *State v. Botts,* 151 S.W.3d 372, 375 (Mo.App.2004). The Court must examine the elements of the crime and consider each in turn; review the evidence in the light most favorable to the judgment; disregard any contrary evidence; and grant the State all reasonable inferences from the evidence. *State v. Whalen,* 49 S.W.3d 181, 184 (Mo. banc 2001). "An inference is a logical and reasonable conclusion of fact not presented by direct evidence, but which via logic and reason, the jury may conclude exists from the established facts." *State v. Gonzalez,* 108 S.W.3d 209, 211 (Mo.App.2003). We defer to the superior position of the jury to assess the credibility of witnesses and the weight and value of their testimony. *State v. Nichols,* 20 S.W.3d 594, 597 (Mo.App. 2000).

Section 195.211.1 sets out:

Except as authorized by sections 195.005 to 195.425 and except as provided in section 195.222, it is unlawful for any person to distribute, deliver, manufacture, produce or attempt to distribute, deliver, manufacture or produce a controlled substance or to possess with intent to distribute, deliver, manufacture, or produce a controlled substance.

Further, section 195.010(12), RSMo Cum. Supp.2001, defines "distribute" as "to deliver other than by administering or dispensing a controlled substance. . . ." Thus, "[t]o sustain the conviction, the State was required to prove (1) conscious and intentional possession of the controlled substance, either actual or constructive; (2) awareness of the presence and nature of the substance; and (3) intent to distribute it." *Gonzalez,* 108 S.W.3d at 211.

Appellant argues that his case is similar to that of *State v. McCleod,* 186 S.W.3d 439, 448 (Mo.App.2006), and *State v. May,* 71 S.W.3d 177, 186(Mo.App.2002), both of which are cases finding insufficient evidence of possession of contraband with intent to distribute. However, it is our view that the factual scenario in each of these cases is quite different from the instant case and do not aid Appellant.

In *McCleod,* 186 S.W.3d at 442–43, during a traffic stop, officers found 222.74 grams of marijuana in an unopened Federal Express box in the defendant's possession along with a smaller 6.72 gram bag of marijuana, "roaches," and rolling papers. The reviewing court determined that these amounts in and of themselves were insufficient to establish intent to deliver. *Id.* at

447–48. The court observed that there was no testimony that the amount of marijuana found on the defendant's person "was wholly inconsistent with personal use." *Id.* at 448. Additionally, the record was devoid of a finding that there were other indicia of intent to deliver such as "the division of the marijuana into several small packages or possession of plastic bags, scales, or a large amount of cash" by the defendant. *Id.* at 445.

Likewise, in *May,* 71 S.W.3d at 185–86, the reviewing court determined there was insufficient evidence to support a conviction for possession of a controlled substance with intent to distribute under an accomplice liability theory. In *May,* the record showed that several adults were found in an apartment in which law enforcement officers found, *inter alia,* a garbage bag containing 21 individually wrapped bags of marijuana totaling 45.45 grams, and a package of 43 empty baggies next to a refrigerator in the kitchen. *Id.* at 180–81. The reviewing court determined the evidence failed to show that defendant had control over the garbage bag or actually retrieved anything from the bag. *Id.* at 185–86. Furthermore, a large amount of cash found on another person in the apartment could not be linked to defendant. *Id.* at 185.

While we agree with Appellant's contention that " '[p]roof of possession of a small amount of a controlled substance, standing alone, is an insufficient basis from which an intent to distribute may be inferred,' " *State v. Parrish,* 852 S.W.2d 426, 429 (Mo. App.1993) (quoting *U.S. v. Franklin,* 728 F.2d 994, 999 (8th Cir.1978)), we note that

"[i]ntent to distribute is ... established by the circumstances in the record." *State v. Salyer,* 884 S.W.2d 354, 357 (Mo.App. 1994). It has long been held that there is no difference between direct evidence and circumstantial evidence, *id.* at 358, and that " '[i]ntent ... is generally not susceptible of direct evidentiary proof and may be established by circumstantial evidence or inferred from surrounding facts.' " *State v. Polson,* 145 S.W.3d 881, 888 (Mo. App.2004) (quoting *State v. Hostetter,* 126 S.W.3d 831, 836 (Mo.App.2004)).

Here, there was sufficient evidence to establish that Appellant not only possessed, but intended to distribute the marijuana found in the laundry room. The search of the black garbage bag placed in the dumpster by Appellant and later retrieved by Detective Rataj revealed marijuana seeds and stems, "corner baggies" or "sandwich baggies that had the corners removed," and rolling papers. According to Detective Rataj, these plastic bags found by him were items known to be used in the "distribution" or "packaging" of marijuana. He stated that corner baggies "indicate[ ] a distribution where [the drug is] repackaged from one bag to another bag." Detective Rataj also testified that when packaging marijuana for sale drug dealers typically break the drug down into smaller amounts, pick the seeds and stems out, and place the amount for sale in a plastic baggie. While plastic baggies may be common in many households,[5] it is this combination of marijuana seeds and stems together with the plastic baggies being cut or their corners removed which are probative of Appellant's intent to distribute.[6]

---

**5.** Detective Rataj testified that the search of Appellant's apartment revealed a large roll of plastic open-top baggies, commonly used to distribute marijuana, which, according to Detective Rataj, are "different" than the plastic

bags "everybody has ... at their residence...."

**6.** *See McCleod,* 186 S.W.3d at 445 (where the defendant, in arguing that he was not guilty of distribution, pointed "out that he was not

Detective Rataj also testified that the small amount of marijuana recovered in the laundry room would have been sufficient to package into ten to fifteen small baggies or "enough for a blunt." He related that with small amounts of marijuana the dealers often "go ahead and make blunts out of them or joint cigarettes" using rolling papers such as those found in the black garbage bag so that they can sell them for several dollars apiece.

■ We also observe that " '[a]lthough isolated facts viewed individually may not support more than a suspicion of guilt, a conviction may rest upon accumulated, inter-dependent facts, no one of which may create more than a suspicion of guilt.' " *State v. Parsons,* 152 S.W.3d 898, 905 (Mo. App.2005) (quoting *State v. Plant,* 694 S.W.2d 751, 755 (Mo.App.1985)). An example of such an inter-dependent fact that standing alone may merely support a suspicion of guilt is that of Appellant's possession of a police scanner that was tuned to an unpublished police frequency. Detective Rataj testified that police scanners are often used by drug dealers to keep track of police movements. This evidence combined with the previously recited evidence relating to the finding of a black garbage bag containing marijuana stems and seeds, and altered plastic bags commonly used in the distribution of marijuana, are probative of an intent to distribute marijuana. *See id.*

"We must consider the totality of the circumstances in determining whether sufficient additional incriminating circumstances have been proven." *Gonzalez,* 108 S.W.3d at 212. During his interview at the police station, Appellant admitted the marijuana was his and, although Detective Rataj referred to Appellant selling marijuana

found with any of the evidence usually relied upon to establish intent to deliver like the division of the marijuana into several small

on numerous occasions, Appellant never denied selling marijuana. More importantly, when asked directly "what [he did] with all the money [he] got from selling weed ...," Appellant replied, *"That is my money."* (Emphasis added). Appellant then stated that "[e]verybody sell[s] weed." Based on the totality of the circumstances, the evidence supports the finding beyond a reasonable doubt that Appellant possessed marijuana with the intent to distribute. *Gonzalez,* 108 S.W.3d at 211. The trial court did not err in denying Appellant's motion for judgment of acquittal.

The judgment and sentence of the trial court is affirmed.

BATES, J., and SCOTT, P.J., concur.