STATE of Missouri, Respondent,

v.

**Kraig LAGER, Appellant.**

**No. WD38846.**

Missouri Court of Appeals,
Western District.

Dec. 1, 1987.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Feb. 2, 1988.

454

Joseph H. Locascio, Special Public Defender, Kansas City, for appellant.

William L. Webster, Atty. Gen., Jefferson City, Scott L. Templeton, Asst. Atty. Gen., for respondent.

Before PRITCHARD, P.J., and GAITAN and COVINGTON, JJ.

COVINGTON, Judge.

Defendant Kraig Lager was convicted by a jury of robbery in the first degree, § 569.020, RSMo 1986, and sentenced to twenty-five years' imprisonment. On appeal, defendant contends the evidence at trial was insufficient to submit the question of defendant's guilt to the jury, asserts error in the trial court's having permitted certain rebuttal evidence, and alleges his motion for new trial should have been granted in light of newly-discovered evidence. Judgment affirmed.

At 12:43 p.m. on February 28, 1986, the Farley State Bank in Farley, Missouri, was robbed at gunpoint by a small man with a false beard. The man, later identified as Michael DeJarnatt, rushed from the bank and entered the passenger side of a 1972 red Chevrolet Impala automobile which left the bank at a high rate of speed traveling south on Missouri Highway 45. Another individual was driving. The vehicle had a loud exhaust system and no license plate.

At 1:16 p.m. members of the Missouri State Highway Patrol, having been informed of the robbery and vehicle description, observed a red 1972 Chevrolet Impala headed in a southerly direction along Highway 45, driving within the speed limit. The patrol pursued and stopped the vehicle, which was the get-away vehicle, at Highway 45's intersection with Fox Road, a point southeast of Farley. Michael DeJarnett was seated on the passenger side. Defendant Lager was at the wheel. The officers observed a paper sack containing money, later identified as the money stolen in the bank robbery, under the passenger seat. DeJarnatt appeared to be intoxicated. The vehicle at this time had a license plate held on by wire on one side.

On April 8, 1986, while incarcerated in the Platte County Jail, Lager passed a note hidden in a box of tobacco to DeJarnatt imploring that DeJarnatt change his representation from being so intoxicated during and after the robbery that he could not recall what happened to a story which would conform to Lager's defense of being picked up in Parkville by DeJarnatt. The note stated in significant part: "... I don't see that both of us should go down for this. You are the only one who can cut me loose. When you remember and tell them you picked me up I have a chance of getting off...."

Lager testified in his own defense that he left his residence on Northeast 45th Terrace in Kansas City about 10:00 a.m. on February 28, 1986, and commenced walking to his mother's home in Leavenworth, Kansas. He stated that he had made his way to the area of Park College in Parkville just before 1:00 p.m., and then turned on Main Street in Parkville when DeJarnatt drove by, saw him, turned around, and offered Lager a ride. Lager stated that he had known DeJarnatt in the late 1970's and denied having seen DeJarnatt again until DeJarnatt picked him up in Parkville. Because DeJarnatt appeared to be intoxicated, Lager, according to his testimony, offered to drive and took the driver's seat. Lager stated that he drove along River Road which changes at Waldron to Waldron Road in a northwest direction. Arriving at the T-intersection of Waldron Road and Highway 45, rather than turning left on Highway 45 toward Leavenworth, Lager made a right-hand turn on to Highway 45 and headed in a southeasterly direction toward a bar near Parkville, DeJarnatt having requested to go to a bar to drink some more.

Lager also testified that he was walking to Leavenworth to his mother's home because of a lack of funds, having promised his mother in mid-February that he would go to Leavenworth at the end of February if he had no funds. On cross-examination, Lager admitted that he had not walked to Leavenworth previously, was walking a route he had not taken before, but expected the walk to take six hours. He further admitted that, had he driven to Leavenworth, he would have driven on Interstate 29 to get on Highway 45.

In rebuttal, among other rebuttal witnesses, the state introduced the testimony of Kara Hartley, DeJarnatt's sister. She stated that she had spent the three days and two nights preceding the date of the robbery with Lager and DeJarnatt at Lager's apartment.

Defendant first contends that the evidence at trial was insufficient to submit the question of his guilt to the jury because the state presented no evidence showing that defendant had been present at the time and place the offense was alleged to have been committed, nor did the state present any evidence that the defendant was a participant in the robbery of the Farley State Bank. Defendant asserts the trial court erred in overruling defendant's motion for judgment of acquittal at the close of the state's evidence and again at the close of all the evidence.

■ Defendant challenges both the denial of the motion for judgment of acquittal at the close of all evidence and at the close of the state's case. Defendant waived his appeal on the motion for acquittal at the end of the state's case by introducing evidence in his own behalf. *State v. Swinford,* 677 S.W.2d 417, 418 (Mo.App.1984).

■ The submissibility of the state's case rested upon circumstantial evidence and was submitted to the jury on the basis of the circumstantial evidence rule pursuant to MAI–CR2d 3.42. In such cases the

facts and circumstances must be consistent with each other and with the hypothesis of defendant's guilt, and they must be inconsistent with his innocence and exclude every reasonable hypothesis of his innocence.... [but] the circumstances ... need not demonstrate the impossibility of innocence, ... [and] the mere existence of other possible hypotheses is not enough to remove the case from the jury.

*State v. Lockett,* 639 S.W.2d 132, 135 (Mo. App.1982) (quoting *State v. Franco,* 544 S.W.2d 533, 534 (Mo. banc 1976), *cert. de-*

*nied,* 431 U.S. 957, 97 S.Ct. 2682, 53 L.Ed. 2d 275 (1977)).

■■■■ Defendant's liability, pursuant to § 562.041.1(2), RSMo 1986, would arise from his aiding and encouraging Michael DeJarnatt to commit the bank robbery. In *State v. Gonzalez–Gongora,* 673 S.W.2d 811 (Mo.App.1984), the court described the factors to be considered in accomplice liability situations:

> The evidence need not show that defendant personally committed every element of the crime. Among other things, indicia of aiding and abetting are presence at the scene of the crime, flight therefrom and association with others involved before, during, and after the commission of the crime. Proof of any form of participation by defendant in the crime is enough to support a conviction and his presence at the scene, his companionship before and after the offense are circumstances from which one's participation in the crime may be inferred.

*Id.* at 813. These factors may be applied to four areas of evidence adduced at trial. The state adduced a combination of circumstances. One, the vehicle into which Michael DeJarnatt jumped after robbing the Farley State Bank was identified as the same vehicle defendant was driving when defendant and DeJarnatt were arrested after the robbery. Two, cash from the robbery was located under the seat on the passenger side of the vehicle. The joint possession of recently stolen property will support an inference of guilt when coupled with other evidence. *State v. Lockett, supra,* at 135. Three, a note was passed by defendant to DeJarnatt while the two were confined in the Platte County Jail. The note instructed DeJarnatt to change his story from having been so intoxicated on the day of the robbery that he could not remember anything to defendant's version of being picked up by DeJarnatt while defendant was walking to Leavenworth. "A permissible inference of guilt may be drawn from acts or conduct of an accused subsequent to an offense if they tend to show a consciousness of guilt by reason of a desire to conceal the offense or accused's role therein." *State v. Lockett, supra,* at

136. Four, there was evidence that defendant had associated with DeJarnatt in the past, both several years earlier and for three days preceding the robbery. Presence, companionship, and conduct before and after the offense are circumstances from which one's participation in a crime may be inferred. *State v. Brueckner,* 617 S.W.2d 405, 410 (Mo.App.1981). These circumstances were separately indicative of guilt and collectively provided a basis for drawing an inference of guilt.

The circumstances were inconsistent with defendant's innocence and excluded any reasonable hypothesis of his innocence. The fact issue of defendant's involvement in the robbery was for the jury.

At the end of his argument on this point, defendant contends that, because there was testimony that DeJarnatt was intoxicated at the time of the arrest and no evidence that he was intoxicated during the robbery, there was a break in the consistency of the circumstantial evidence. There was, however, a thirty-three minute time interval between the robbery and the arrest during which DeJarnatt could have consumed alcohol; nevertheless, DeJarnatt's intoxication had no bearing on defendant's guilt.

The evidence was sufficient to deny defendant's motion for judgment of acquittal at the close of all the evidence. Point I is ruled against defendant.

In his second point, defendant asserts error in the trial court's allowing rebuttal testimony of four alibi rebuttal witnesses, claiming that each witness was incompetent to testify, that the evidence of each was immaterial and irrelevant, was not proper rebuttal evidence, and unduly prejudiced the defendant. Defendant alleges the evidence created a cumulative negative impact and confused the trier of fact.

The trial court has considerable discretion in admitting or excluding rebuttal evidence, which is evidence which tends to explain, counteract, repel or disprove evidence offered by the opposite party. *State v. Hyatt,* 716 S.W.2d 423, 425 (Mo.App. 1986).

June Pierce testified that about 1:15 p.m. on February 28, 1986, he observed a red vehicle, which he later identified as the get-away car, speeding south toward Waldron away from Highway 45. Defendant claims this witness was incompetent to testify because Pierce did not know the defendant nor where the defendant was on the date of the robbery, could not testify that he saw defendant in the car, and because Pierce was not absolutely certain of the time at which he saw the car. Pierce's evidence rebutted defendant's testimony that he was driving northwest on Waldron Road.

Mary Lindsay of Waldron testified she saw and heard a red vehicle, which she later identified as the get-away vehicle, in Waldron at 12:45 to 12:50 p.m. on February 28, 1986, traveling through Waldron in the direction of Parkville (southeast). Although she did not see the car again, she heard the same loud muffler noise between two and three minutes after she saw and heard the car. Defendant testified that he drove the other direction on River and Waldron Roads.

Gary D. McMullin, chief of police at Weatherby Lake, Missouri, having heard about the robbery by dispatcher's broadcast, drove to the intersection of Highway 45 and Blair Road to watch for a vehicle described by the dispatcher. He saw nothing. This evidence is clearly irrelevant, immaterial, and improper rebuttal evidence.

Officer Robert Jordan testified he was at Park College area around 1:00 p.m. on the lookout for a red Chevrolet. He saw no pedestrians and he saw no red vehicle on Highway 9 (Main Street) prior to 1:00 as he drove on Main Street toward the Park College area. This testimony was irrelevant and immaterial.

■ Defendant has the burden of showing both error and prejudice. *State v. Bullington*, 680 S.W.2d 238, 242 (Mo.App. 1984). Harmless error in admission of evidence does not warrant reversal of a conviction. If the court can conclude beyond a reasonable doubt that erroneously-received evidence was harmless to defendant's cause, the error is harmless. *State v. Miller*, 650 S.W.2d 619, 621 (Mo. banc 1983).

■ McMullin's and Jordan's evidence should have been excluded as irrelevant and immaterial; further, the competency of each to testify is suspect. Neither witness knew anything. Irrelevancy, however, operates "to mitigate a claim of prejudice." *Bullington, supra*, at 243. If evidence is irrelevant and immaterial because the witness has no knowledge whatsoever, under these circumstances, such evidence can hardly be said to confuse the trier of fact. Even if the testimony of Pierce and Lindsay were immaterial and irrelevant, the same mitigation applies. Weighed against other evidence of guilt, including: one, defendant's driving the get-away vehicle thirty-three minutes after the robbery; two, cash from the robbery being located under the seat on the passenger side of the vehicle; three, Lager's passing the note to DeJarnatt while the two were confined in the Platte County Jail; and four, Lager's having associated with DeJarnatt for three days preceding the robbery, the irrelevant and immaterial evidence could not have caused prejudice to the defendant. The point is ruled against defendant.

■ In his third point, Lager contends the trial court erred in failing to grant a new trial on the basis of newly-discovered evidence, the statement of Jeffrey Utz. Kara Hartley, Michael DeJarnatt's sister, testified she spent three days and two nights preceding the date of the robbery with Lager and DeJarnatt at Lager's apartment. Hartley also testified that on Thursday evening, February 27, 1986, the evening before the robbery took place, DeJarnatt was too intoxicated to take her home. Accordingly, Hartley asked a friend, Jeffrey Utz, to drive her home from defendant's apartment to her grandmother's house. The affidavit of Jeffrey Utz, attached to defendant's motion for new trial, stated that at no time during February of 1986, and, specifically, on Thursday evening, February 27, 1986, was Kara Hartley ever in his automobile either alone or with anyone else. Utz further stated that he had no knowledge of where the defendant

may have resided in February, 1986, and, specifically on Thursday, February 27, 1986.

 The evidence described in the motion and affidavit is evidence which should have been presented, if admissible, as sur-rebuttal evidence. There was no mention of defendant's inability to procure the presence of Utz before verdict; there was no application for continuance of the trial for opportunity to question Utz and no excuse for not asking for a continuance. *See State v. Eno,* 313 S.W.2d 720, 722 (Mo. 1958). Further, even if Utz' information could be designated as "newly-discovered evidence," defendant's motion for new trial does not satisfy the four requirements set forth in *State v. Taylor,* 589 S.W.2d 302, 305 (Mo. banc 1979), which addresses the question of obtaining a new trial on the basis of newly-discovered evidence. Under *Taylor,* the moving defendant must satisfy the following requirements: one, the facts must have come to the knowledge of the accused since the end of the trial; two, the fact that the evidence did not come to the knowledge of the defendant until after the trial must not be owing to any want of due diligence on his part; three, the evidence must be so material that it would probably produce a different result on retrial; and four, the evidence must not be cumulative only or merely of an impeaching nature. *Taylor,* at 305. Defendant Lager's motion for new trial fails to assert that the fact that the evidence did not come to defendant's knowledge until after the trial was not owing to any lack of due diligence on his part. Moreover, disclosure of Utz' testimony to the jury would have served only to impeach Hartley's credibility and falls short of being evidence which in all probability would produce a different result on a new trial.

Judgment affirmed.

All concur.