**STATE of Missouri, Respondent,**

v.

**Raymond L. PARSONS, Appellant.**

**Nos. WD 63112, 63378.**

Missouri Court of Appeals,
Western District.

Jan. 18, 2005.

Melinda Kay Pendergraph, State Public Defender, Columbia, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Karen L. Kramer, Asst. Attorney General, Jefferson City, MO, for Respondent.

Before HAROLD L. LOWENSTEIN, P.J., JAMES M. SMART, JR., J., EDWIN H. SMITH, C.J.

JAMES M. SMART, JR., Judge.

Raymond Parsons appeals his conviction following a jury trial for stealing, for which he was sentenced to seven years' imprisonment. He contends that the evidence was not sufficient to support the conviction. The judgment is affirmed.

### Factual and Procedural Background

Raymond Parsons was charged in Platte County with burglary, section 569.170, RSMo 2000,[1] stealing a rifle, section 570.030, and stealing a motor vehicle, section 570.030. Viewed in the light most

---

1. All statutory references are to RSMo 2000 unless otherwise indicated.

favorable to the verdict, the evidence at trial was as follows:

Early in the afternoon on December 5, 2002, Michelle Geiler and April Chamberlain were driving north on Waukomis Street in Kansas City, when a red Saturn came "whipping" around them. As it passed, one of the occupants of the Saturn threw coins out the window at them. The driver of the Saturn ran a red light at the next intersection, almost getting hit by a car, then turned left onto 68th Street. Geiler and Chamberlain watched as the driver then drove into a field off a gravel road. Geiler followed the Saturn in her car and pulled off the road near the field. She called the police on her cell phone, reported the incident, and gave their location. Geiler and Chamberlain lost sight of the Saturn when it drove into a tree line. Eventually, they saw two young men running through the field, into a creek bed, and under a bridge. Chamberlain ran to the bridge and "hollered" down at them that she had called the police. The two young men continued to run up the creek bed toward a nearby house. Geiler and Chamberlain called the police again to update the location of the young men.

Two officers patrolling in the area received a call reporting that a red Saturn that had been "driving erratically" and "trying to run parties off the road" was now parked in a field near 68th and Waukomis. When the officers arrived at the field, they found a red Saturn driven into a creek bed. On closer inspection, the officers found that the engine was still running and concluded that the car had been crashed there. Assuming the vehicle had been stolen, the officers called in the license plate number. They determined that the vehicle belonged to David and Arlene Perry.

When the officers were unable to reach the Perrys by telephone, they drove to the Perry residence. The house was in a slightly remote location, only about a half mile from where the Saturn had been wrecked. The officers knocked on the door, but received no answer. The Perrys and their teenage daughter all had left home early that morning for work and school. David Perry left last, at around 7:00 a.m., locking the doors of the residence behind him. The red Saturn was left in the driveway. Walking around the house, the officers discovered that the door leading into the garage had been forced open and the garage door also was open. The door leading from the garage into the house had a foot mark on it, and there was debris on the ground. The officers suspected a burglary. They notified the dispatcher, drew their weapons, and entered to investigate further. They found the house in complete disarray: drawers in each room had been opened, food and other items were scattered throughout the house, and several packages under the Christmas tree had been opened. The officers did not find anyone at the residence.

While processing the scene, the officers received a call stating that two white males with short hair had been spotted running southbound through the creek bed where the Saturn was wrecked and were hiding in a nearby culvert. The officers left the Perry residence to go check the culvert, which was only a short distance away. While at the culvert, the officers heard yelling coming from a house up on a nearby hill. One officer heard the word "cop" and some other "mumbling." The officers returned to their car and drove to the house.

There, the two officers were met by another officer. After receiving no answer at the front door, they walked around the residence and found the garage door open. Believing they were walking into another

burglary, the officers drew their guns, announced their presence, and entered the residence. They proceeded upstairs, again announcing their presence. The officers, at first, found no one and received no response. Then, one of the officers found Ryan Parsons and Raymond Parsons (the appellant) hiding in a closet in an upstairs bedroom. Neither of the Parsons lived in the house. Both were cuffed and detained. A third individual, Kamel Elburki, who did live at the house, was detained after he came out of a nearby barn.

After getting the owner's consent, the officers conducted a thorough search of the Elburki residence. There, they found the following items that had been taken from the Perry residence: various food items, a .22 rifle, a jar full of coins, a car stereo, and a Honda motorcycle. The property stolen from the Perry residence evidently had been taken to the Elburki house earlier that day. The officers also found some wet clothes and shoes in one of the bedrooms.

The officers asked Michelle Geiler and April Chamberlain to meet them at the Elburki residence to identify the two young men they had seen running through the creek bed. Both Chamberlain and Geiler identified Raymond Parsons and his brother, Ryan Parsons, as the ones they had seen riding in the red Saturn and running in the creek. Neither thought Elburki was one of them. Chamberlain was positive that Raymond Parsons was in the Saturn when it passed them, but she did not know if he was the driver or the passenger. She was "[a] hundred percent positive" that Raymond Parsons and Ryan Parsons were the two she had seen earlier. She stated that Kamel Elburki, who was five feet tall and sixteen years old, was

"entirely too little and entirely too young" to have been one of the two.

At trial, the defense called two witnesses: a latent print examiner, who testified that no latent prints of any value were recovered from the Perry residence, and Kamel Elburki. Elburki, who apparently had already been convicted and sentenced prior to Raymond Parsons' trial, testified that he and Ryan Parsons stole the Perrys' red Saturn, crashed it in the field, and stole the other items. He stated that both Ryan and Raymond Parsons had stayed at his house the night before the burglary, but denied that Raymond had been involved in the burglary or in stealing the car. He also said that Raymond was not in the stolen car at all that day. Evidence also was introduced in the State's case that, in an interview after his arrest, Raymond admitted spending the night at the Elburki residence the night before the burglary.

The jury was instructed based on a theory of accomplice liability. After deliberating for nearly four hours, the jury acquitted Raymond Parsons of burglary and stealing the rifle, but found him guilty of stealing the motor vehicle. In accordance with the jury's recommendation, the trial court sentenced Parsons to seven years. The court also imposed a $500 fine and ordered Parsons placed in the Regimented Discipline Program, pursuant to section 217.378. The Department of Corrections later informed the court that because Parsons has "significant" mental health issues, he does not qualify for the Regimented Discipline Program. The court resentenced Parsons to seven years and imposed the $500 fine.[2]

2. This is a consolidation of Parsons' appeals from the original sentencing and from the

resentencing.

On appeal, Parsons contests the sufficiency of the evidence to support the conviction.

## Standard of Review

On a challenge to the sufficiency of the evidence, appellate review is limited to determining whether there is sufficient evidence from which a reasonable juror could find the defendant guilty beyond a reasonable doubt. *State v. Dulany,* 781 S.W.2d 52, 55 (Mo. banc 1989). This court is charged with determining whether all of the evidence, direct and circumstantial, is sufficient to provide any rational juror with proof beyond a reasonable doubt as to each element of the crime. *State v. Grim,* 854 S.W.2d 403, 405 (Mo. banc 1993). In making this determination, we accept as true all evidence that is favorable to the State, including all favorable inferences therefrom, and disregard all evidence and inferences to the contrary. *State v. Chaney,* 967 S.W.2d 47, 52 (Mo. banc 1998).

## Argument

In his sole point on appeal, Parsons argues that the evidence was insufficient for a reasonable jury to find him guilty of stealing the vehicle or of acting in concert with another to steal it. He contends that the evidence, when viewed in the light most favorable to the verdict, shows only that he was riding in a recently stolen vehicle with another, ran from the car after it crashed, and hid in a closet under a pile of clothing while the police searched his friend's house. This, he claims, is sufficient only to establish guilt of second-degree tampering,[3] at most. To support his contention, Parsons relies on Elburki's testimony that it was Elburki and Ryan Parsons who actually stole the car. This ignores the standard of review, however, under which the evidence is viewed in the light most favorable to the verdict, and evidence and inferences to the contrary are ignored.

## *Accomplice Liability*

All three counts against Parsons were submitted to the jury on a theory of accomplice liability, which is based on the premise that all persons who act in concert to commit a crime are equally guilty. *See State v. Meuir,* 138 S.W.3d 137, 143 (Mo. App.2004). Under that theory, a person with the required culpable mental state may be held criminally liable for an offense committed by the conduct of another person for which he is "criminally responsible." Section 562.036. A person is "criminally responsible" for the conduct of another when

> [e]ither before or during the commission of an offense with the purpose of promoting the commission of an offense, he aids or agrees to aid or attempts to aid such other person in planning, committing or attempting to commit the offense.

Section 562.041.1(2). Thus, "[a]n accomplice is one who, before or during the commission of a crime, intentionally and knowingly aids or encourages the commission of a crime[.]" *Meuir,* 138 S.W.3d at 143. The evidence need not directly place the defendant in the act of committing the crime. *State v. Carter,* 849 S.W.2d 624, 627 (Mo.App.1993).

The jury found Parsons not guilty on Counts I and II, burglary and stealing the rifle; thus, the only issue is whether sufficient evidence supported the proposition that Parsons stole the Saturn or acted with

---

3. Pursuant to section 569.090.1(2), a person commits second-degree tampering if he "[u]nlawfully rides in or upon another's automobile...." Second-degree tampering is a class A misdemeanor. Section 569.090.3.

his brother to steal it. In Count III, Parsons was charged with stealing a motor vehicle, in violation of section 570.030.1. A person commits the crime of stealing if he "appropriates property or services of another with the purpose to deprive him . . . thereof, either without his . . . consent or by means of deceit or coercion." Stealing a motor vehicle is a class C felony. Section 570.030.3(3)(a).

To convict Parsons under an accomplice liability theory, the State was required to prove the commission of all elements of the crime by a principal, with "affirmative participation" by Parsons to aid the principal in the commission of the crime. *State v. Smith*, 108 S.W.3d 714, 718 (Mo.App.2003). Thus, the jury was instructed under Count III to find:

> First, that on or about December 5, 2002, in the County of Platte, State of Missouri, the defendant or Ryan Parsons took a red Saturn car, property in the possession of Arlene Perry, and
>
> Second, that defendant or Ryan Parsons did so without the consent of Arlene Perry, and
>
> Third, that defendant or Ryan Parsons did so for the purpose of withholding it from the owner permanently, and
>
> Fourth, that the property taken was a motor vehicle,
>
> then you are instructed that the offense of stealing has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:
>
> Fifth, that with the purpose of promoting or furthering the commission of that stealing, the defendant acted together with or aided Ryan Parsons in committing that offense,
>
> then you will find the defendant guilty under Count Three of stealing.

Parsons does not dispute the first four elements of this jury instruction. He con-

cedes here (and asserted at trial) that his brother, Ryan, took the red Saturn from the Perry residence without their permission for the purpose of withholding it permanently. Parsons disputes only the final element, i.e., that he acted together with or aided Ryan in committing that offense.

■ Any evidence, either direct or circumstantial, that shows "affirmative participation" in aiding the principal to commit the crime is sufficient to support a conviction. *State v. Puckett*, 611 S.W.2d 242, 245 (Mo.App.1980). The requirement of affirmative participation may be satisfied by inference. *Carter*, 849 S.W.2d at 627. Some examples of circumstantial evidence that can create an inference of "affirmative participation" include presence at the scene of the crime, flight therefrom, and association with others involved before, during, and after the commission of the crime. *Meuir*, 138 S.W.3d at 143. Also, conduct before and after the offense that "tends to show a consciousness of guilt by reason of a desire to conceal the offense or the accused's role therein" may create an inference of affirmative participation. *State v. Lager*, 744 S.W.2d 453, 456 (Mo.App.1987). Such an inference may also be drawn from the possession of recently stolen property or an attempt by an accused to deceive the police. *Puckett*, 611 S.W.2d at 245; *see also Lager*, 744 S.W.2d at 456 ("joint possession of recently stolen property will support an inference of guilt when coupled with other evidence").

### Joint Possession

Parsons concedes in his brief that, when viewed in the light most favorable to the verdict, the evidence shows he had joint possession of the stolen vehicle. He contends, though, that this evidence, alone, is insufficient to establish his guilt for stealing the vehicle. He notes that when joint

possession is relied upon by the State, there must be other evidence, in addition to the possession, to connect the possessor with the crime. He contends that there was no evidence of anything beyond mere possession to support a finding of affirmative participation in this case.

■ It is true that in cases where the State relies on joint possession of recently stolen property, some additional evidence that ties the accused to the crime is required. *State v. Dodson,* 641 S.W.2d 115, 118 (Mo.App.1982) (*citing State v. Schleicher,* 458 S.W.2d 351, 353 (Mo. banc 1970); *State v. Farmer,* 490 S.W.2d 72, 74 (Mo.1973); *State v. Cobb,* 444 S.W.2d 408, 414 (Mo. banc 1969)). Conversely, courts have held that unexplained joint possession of stolen property, plus other evidence of affirmative participation, which can be established by inference, is sufficient to find guilt. *See, e.g., State v. Williams,* 18 S.W.3d 425, 430–31 (Mo.App.2000) (conviction affirmed where defendant was in joint possession of stolen cattle, coupled with suspicious conduct aimed at avoiding detection and making it difficult to trace the proceeds from the sale of the cattle to him); *State v. White,* 736 S.W.2d 499, 502 (Mo.App.1987) (conviction affirmed where defendant was in a car with stolen items, at around the time they were taken, and was sweating); *State v. Wells,* 729 S.W.2d 591, 593 (Mo.App.1987) (conviction affirmed where defendant had been drinking beer with an acquaintance, who pleaded guilty to stealing a pickup, at the bar from which the pickup was taken, and was seen riding in the stolen pickup).

Parsons cites several cases in which courts found the evidence insufficient to prove stealing even though the defendant was found in joint possession of stolen property, *e.g., Farmer,* 490 S.W.2d 72 (defendant found in vehicle with stolen cash register); *State v. Schleicher,* 438 S.W.2d 258 (Mo.1969) (defendant found removing stolen merchandise from a truck he did not own, with men he did not have a past association with, and no evidence of flight); *State v. Goldfeder,* 242 S.W. 403 (Mo.1922) (defendant found at a garage with stolen property three weeks after property was stolen).

We have reviewed all of the appellant's cases and find none to be controlling. As noted by the State, the cases are inapposite because the holdings were based on a lack of any inference of affirmative participation by the defendant, other than the defendant's mere presence with the stolen items. Here, there was additional evidence of affirmative participation.

### Evidence of Affirmative Participation

■ Parsons' affirmative participation in stealing the vehicle may be inferred from the following:

· The night before the vehicle was stolen, Parsons and his brother Ryan stayed at the home of Kamel Elburki.

· Elburki admitted that he and Ryan committed the burglary, and Raymond conceded at trial that Ryan stole the vehicle.

· April Chamberlain and Michelle Geiler identified Parsons as one of the two men who threw coins at them from the red Saturn; this was early in the afternoon on the same day the Saturn was stolen and within the same vicinity from which it was taken.

· Parsons and Ryan crashed the red Saturn, and both Chamberlain and Geiler identified Parsons as one of the two men they saw running away from the car in the creek bed.

· Parsons did not respond to the police officers when they announced their presence at the Elburki residence near where the Saturn was wrecked.

In that residence, the officers found Parsons hiding under a pile of clothes and other items stolen from the Perrys.

 This evidence is sufficient to prove stealing under the theory of accomplice liability because it shows that Parsons had voluntarily associated himself with those who committed the burglary and stole the vehicle both before and after the crime. It also shows that Parsons was in joint possession of the stolen vehicle in open association with his brother, Ryan, whom Parsons concedes was involved in stealing it. Companionship before and after an offense is a circumstance from which one's participation in the crime may be inferred. *Lager*, 744 S.W.2d at 456. Parsons' flight from the crashed, stolen vehicle and his obvious evasion of the police in close proximity to the time and place of the theft, when coupled with the joint possession, establishes an inference of guilt from which a reasonable juror could infer that he voluntarily associated himself with the stealing of the vehicle. An attempt by a defendant to cover up his involvement is a factor that may, in conjunction with other evidence, support the inference of affirmative participation as an accomplice. *Smith*, 108 S.W.3d at 721; *see also Wells*, 729 S.W.2d at 593 (although flight to avoid arrest or prosecution will not sustain a conviction by itself, it is a circumstance indicating guilt).

 "Although isolated facts viewed individually may not support more than a suspicion of guilt, ... a conviction may rest upon accumulated, inter-dependent facts, no one of which may create more than a suspicion of guilt." *State v. Plant*, 694 S.W.2d 751, 755 (Mo.App.1985). Here, the "totality of the circumstances" constitutes sufficient evidence of Parsons' guilt. *See State v. Shockley*, 98 S.W.3d 885, 890 (Mo.App.2003). A reasonable juror could infer that because Parsons associated with others involved in the crime both before and after the crime, jointly possessed (without explanation) the stolen vehicle in the same time frame it was stolen and within a short distance from where it was stolen, ran from the vehicle to avoid detection, and attempted to deceive the police by hiding in a residence with other stolen merchandise, he aided or acted together with Ryan in stealing the red Saturn.

When reviewing the sufficiency of evidence to support a criminal conviction, we give great deference to the trier of fact. *Chaney*, 967 S.W.2d at 52. We are not to act as a " 'super juror' with veto powers" over the fact-finder. *Grim*, 854 S.W.2d at 414. Here, the jury chose not to believe the testimony of Elburki, and instead relied upon the State's evidence. Given the totality of the circumstances in this case, our deferential standard of review, and the jury's entitlement to determine the reliability, credibility, and weight of the witnesses' testimony, we find that there was sufficient evidence that Parsons actively participated in the crime to support a finding of guilt based on accomplice liability.

### Conclusion

For the foregoing reasons, the judgment is affirmed.

LOWENSTEIN and EDWIN H. SMITH, JJ., concur.