**STATE of Missouri, Plaintiff–
Respondent,**

v.

**Christopher A. REESE, Defendant–
Appellant.**

**No. 27100.**

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 21, 2006.

Craig A. Johnston, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Cecily L. Daller, Asst. Atty. Gen., Jefferson City, for respondent.

JOHN E. PARRISH, Judge.

Christopher A. Reese (defendant) was convicted, following a jury trial, of murder

in the second degree. § 565.021.1(1).[1] He appeals asserting that reversible error occurred in instructing the jury. This court affirms.

Defendant and Mathew Nelson were together at different locations in Springfield, Missouri, the evening of May 6, 2004. They were together at the Johnson's One Stop shortly after 10:00 p.m. Defendant entered the store immediately after Nelson. They both were at a night club, Remington's, shortly before 11:00 p.m. Defendant entered Remington's immediately after Nelson. Both were recorded on surveillance videos at each location. Defendant and Nelson each left Remington's at 1:11 a.m., May 7. Nelson left with an unidentified black female. Defendant left with Shellee Watkins, the victim in the murder charge that is the subject of this appeal.

At 1:49 a.m., Nelson and defendant were once again at Johnson's One Stop. Again, defendant entered the premises immediately after Nelson. They stood by one another while inside the store and, on the surveillance video tape, appeared to talk to one another. Defendant had a red CD player with him[2]. Defendant and Nelson left the store at 1:54 a.m. Defendant left first, followed by Nelson. Shellee Watkins entered the store at 1:55 a.m., made a purchase, and left a few seconds later.

Following reports of seeing what appeared to be someone lying in an alley in the area of North Glenstone and Florida, Officer John Stuart of the Springfield Police Department found a body. He arrived at the scene at 2:49 a.m. The body was lying between a car and a building. It was later identified as Shellee Watkins.

The report of a body in the alley was made by Jonathan Whitsell. Whitsell was working at a Wal–Mart store at Kearney and Glenstone on the north side of Springfield. His shift ended at 10:30 p.m. He and a friend often went to Ozark Fitness Center on the south side of Springfield after he finished his work shift. They went to the fitness club at about 1:00 a.m. the morning of May 7. While at the fitness club, Whitsell talked to a worker at the club about a new fitness facility that was being built on the north side of town at the intersection of Glenstone and Florida.

Whitsell decided to drive by the building after he finished his workout. He wanted to see the size of the building and the size of the new gym. It was about 2:45 a.m. when he got to the area of the new building. He drove down an alleyway on the backside of the building where he saw a vehicle and what appeared to be a person lying next to the vehicle. He thought the person was sleeping until he looked back after he had passed the vehicle. He saw what looked to be blood. He explained, "Maybe the person was injured. And so then I pulled around and faced my headlights on the person." The person appeared to have been injured. Whitsell saw "a lot of bleeding from the face."

Whitsell "hit the horn a little bit" but observed no movement. He drove to a location where he could call the police, called 911, and returned to the alley. Officer Stuart was at the scene when Whitsell returned. Paramedics arrived shortly thereafter. Shellee Watkins was declared dead at the scene. A subsequent autopsy determined the cause of death as exsanguination—the action of losing blood—due to blunt injury of the head due to an assault.

During the course of the investigation, officers learned that Ira Andy Farmer, a

---

**1.** References to statutes are to RSMo 2000.

**2.** Defendant later denied having a CD player. There was evidence that Shellee Watkins had a red portable CD player with her and that it was found, broken, at the location where she was killed.

disposal service employee, and Elma Beth Tatum, a United Parcel Service driver, had observed the area where Shellee Watkins was found during the early morning hours of May 7, 2004. The area was within the route Farmer serviced. His route records indicated that he passed the alley between 2:10 and 2:15 a.m. He noticed a parked car in the alley where Shellee Watkins was later found. He believed there were two people in the car; that they were engaged in sexual intercourse. He saw a person in the car facing the back of the car with shoulders slumped and wearing a light tan or yellow shirt. Farmer contacted the police after hearing a radio report about the murder. He identified the car parked in the alley alongside Shellee Watkins' body as the car he had seen at that location earlier that morning.

Elma Beth Tatum passed the alley at about 2:40 a.m. She explained what caught her attention:

> First thing that caught my attention was there was two cars parked. As I was approaching the alley, I could see two cars parked there and there's never any vehicles there so that drew my attention. As I got up to the alley, almost across from it, I could see the two cars, someone laying on the ground and a person standing facing the east, so would have been a profile to me.

The cars were facing north, one directly behind the other. The person standing was a black male, approximately 5'6" or 5'7". His clothing was tan or light brown. She thought his pants were light brown or tan; that the shirt was striped, "looked like a light color and a light tan." Photographs from the security cameras at Remington's and Johnson's One Stop show defendant wearing a light colored shirt with a pattern made up of vertical and horizontal stripes.

Instructions Nos. 5 and 6 were given the jury. They state:

## INSTRUCTION No. 5

A person is responsible for his own conduct and he is also responsible for the conduct of another person in committing an offense if he acts with the other person with the common purpose of committing that offense or if, for the purpose of committing that offense, he aids or encourages the other person in committing it.

## INSTRUCTION No. 6

If you find and believe from the evidence beyond a reasonable doubt:

First, that on or about May 7th, 2004, in the County of Greene, State of Missouri, the defendant or Matthew Nelson caused the death of Shellee C. Watkins by striking her in the head,

and

Second, that defendant or Matthew Nelson was aware that his conduct was causing the death of Shellee C. Watkins,

and

Third, that defendant or Matthew Nelson did not do so under the influence of sudden passion arising from adequate cause,

then you are instructed that the offense of murder in the second degree has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:

Fourth, that with the purpose of promoting or furthering the commission of that murder in the second degree, the defendant acted together with or aided Mathew Nelson in committing the offense,

then you will find the defendant guilty of murder in the second degree.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions,

you must find the defendant not guilty of that offense.

As used in this instruction the term "sudden passion" means passion directly caused by and arising out of provocation by Shellee Watkins which passion arose at the time of the offense. The term "adequate cause" means cause that would reasonably produce a degree of passion in a person of ordinary temperament sufficient to substantially impair a person's capacity for self-control.

Other facts gleaned from the evidence that are needed to address issues presented by the point on appeal will be included in the discussion that follows.

Defendant presents one point on appeal. He argues that the trial court erred in giving Instruction No. 6 over his objection "because that instruction was broader in scope than the evidence presented ... in that Instruction No. 6 had the potential for misleading and confusing the jury because there was no evidence that [defendant] 'acted together with or aided Matthew Nelson' in committing the offense of second degree murder."

■ *State v. Thompson*, 112 S.W.3d 57 (Mo.App.2003), explains:

"The basic principle applicable to the submission of instructions is that they should not be given if there is no evidence to support them. Instructions must be supported by substantial evidence and reasonable inferences to be drawn therefrom. Instructions which are at variance with the charge or which are broader in scope than the evidence are improper unless it is shown that an accused is not prejudiced thereby." *State v. Daugherty*, 631 S.W.2d 637, 639–40 (Mo.1982) (internal citations omitted) (*overruled on other grounds by State v. Baker*, 636 S.W.2d 902, 904 (Mo.banc 1982)).

*Id.* at 69. "[A] court can instruct a jury on alternative theories as long as each is supported by evidence." *State v. Howard*, 896 S.W.2d 471, 492 (Mo.App.1995).

■ There was evidence at trial that defendant and Matthew Nelson were together during the evening before the murder. There was evidence that they were together after the time of death. There was evidence that both had blood on them; that after Shellee Watkins was killed they went to Johnson's One Stop and, after that, to defendant's residence where they changed clothes. "Companionship before and after an offense is a circumstance from which one's participation in the crime may be inferred." *State v. Parsons*, 152 S.W.3d 898, 905 (Mo.App.2005).

Ira Andy Farmer saw two people he thought were engaging in sexual intercourse in the front seat of Shellee Watkins' car. He described the shirt of the person whose back he saw. The description fit that which defendant was wearing. After Farmer was at the area where the car was parked, Elma Beth Tatum passed nearby and saw a second car at the scene. She saw someone lying on the ground and someone standing by the body.

Defendant testified that Matthew Nelson arrived after he and Shellee Watkins had engaged in sexual intercourse. Defendant stated that Matthew Nelson killed Shellee Watkins. He admitted leaving the scene with Nelson, going to Johnson's One Stop, and then to defendant's residence where he and Nelson changed clothes; that they were splattered with blood.

There was evidence that on March 4, 2004, Shellee Watkins had participated in a drug buy from Matthew Nelson as an unwitting assistant to an undercover police officer that led to Nelson's arrest; that her testimony against Matthew Nelson would be damaging to him.

The jury may accept or reject any part of any witness' testimony. *State v. Gilpin*,

954 S.W.2d 570, 579 (Mo.App.1997). "The 'credibility and the effects of conflicts or inconsistencies in testimony are questions for the jury.'" *Id. quoting State v. Dulaney,* 781 S.W.2d 52, 55 (Mo.banc 1989). "It is for the jury, not the appellate court, to weigh the liability and credibility of the witnesses." *Gilpin, supra.*

 On the basis of the evidence produced, the jury could have believed that defendant aided and promoted or furthered the murder of Shellee Watkins by luring her and keeping her at the alley where Nelson later appeared; that he did so in furtherance of Nelson committing the act of murder or that defendant committed the act of murder in furtherance of the wishes of Nelson. The evidence that would permit a jury to so find supports the giving of Instruction No. 5 that established alternate theories regarding the acts that produced the death of Shellee Watkins. Defendant's point is denied. The judgment is affirmed.

RAHMEYER, P.J., and LYNCH, J., concur.