

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED110702 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | the City of St. Louis |
| vs. | ) | 1922-CR01143-01 |
| | ) | |
| SAMUEL L. SCOTT, | ) | Honorable Madeline O. Connolly |
| | ) | |
| Appellant. | ) | Filed: September 19, 2023 |

Thomas C. Clark, II, P.J., James M. Dowd, J., and John P. Torbitzky, J.

## OPINION

Appellant Samuel L. Scott was convicted of first-degree murder, fourth-degree domestic assault, and violation of an order of protection after beating his wife M.J. to death on April 9, 2019, upon his release from jail that day in connection with a previous domestic assault on M.J. that he perpetrated on January 6, 2019.

In Points I and II, Scott asserts that the trial court abused its discretion in admitting into evidence M.J.'s statement to police after the January 6 beating that Scott had told her he "should have finished what he started" since he knew M.J. was going to contact police. Scott argues this hearsay statement should not have been admitted in evidence because: (1) the doctrine of forfeiture by wrongdoing was inapplicable in that the State failed to meet its burden to show that Scott's actions were for the purpose of preventing M.J. from testifying against him, and (2) the hearsay statement was not logically or legally relevant. In Point III, Scott alleges that the trial

court abused its discretion in denying his motion for judgment of acquittal at the close of evidence because the State failed to prove beyond a reasonable doubt that he was guilty of first-degree murder in that the State did not produce evidence of deliberation. We affirm.

## Factual Background

Viewed in the light most favorable to the verdict, the relevant evidence is as follows.[1] Scott and M.J. had a tumultuous marriage. Scott verbally and physically abused M.J. on multiple occasions before the April 9, 2019, brutal beating from which she succumbed five days later.

Three instances of abuse appear in our record. On May 29, 2017, M.J. applied for an order of protection in which she averred, under oath, that Scott spit on her face, struck her chest, threatened to choke her, and then told her that he hoped she would have a heart attack and die. She went to the hospital where she was diagnosed with chest inflammation and right arm bruises. She further disclosed in her statement that she was afraid he would finish what he started. On April 10, 2018, M.J. applied for another order of protection in which she reported that Scott was mentally abusing her and that he needed mental help before he hurt her. Upon waking that morning, Scott had begun cursing M.J. and threatening to beat her or kill her if she tried to leave the house. She feared that if she said the wrong thing, he would kill her.

Another violent attack, which led to Scott's initial arrest, occurred on January 6, 2019. Scott became angry and hit M.J. in the face upon overhearing M.J. discuss with her daughter M.J.'s plans to move to Springfield, Missouri. M.J. went to St. Alexius Hospital in St. Louis City for medical treatment, where she requested to speak with a police officer. The officer noticed a red mark on her face. She repeated to the officer what Scott told her—that he should

---

[1] *State v. Sokolic*, 660 S.W.3d 54, 56 (Mo. App. E.D. 2023).

have finished what he started because he knew she was going to contact the police. The officer issued a "wanted" on Scott for the assault.[2]

On April 4, 2019, M.J. texted one of her daughters that she was scared of Scott and asked her to call the police to remove him from their home. Her other daughter called the police for a well-being check. The officer who responded to the scene testified that M.J. seemed withdrawn, scared, and nervous. After determining that Scott was wanted for fourth-degree domestic assault arising from the January 6 incident, the officer took Scott into custody for an interview during which Scott admitted that he slapped M.J. He was arrested and charged with fourth-degree domestic assault. While in the holding cell soon after his arrest and after another inmate asked him why he was in jail, Scott's angry response was: "that bitch put me in jail again."

The next day, April 5, the investigating officer found M.J. hesitant and fearful of Scott's impending release from jail. M.J. then applied for an order of protection which was granted on April 8, 2019. The order of protection referenced both the January 6 assault and the incident on April 4, in which Scott verbally abused and threatened M.J. M.J. swore in her application that her right ear remained painful from the January attack and that Scott had mentally and physically abused her for three years. She further requested that he not be allowed to enter their residence upon his release and asked that the order be renewed at the end of each year. On April 9, Scott was served with the order of protection then released from jail.

Later that evening, police and EMS responded to the couple's home where they found M.J. beaten, bloody, and unresponsive. In addition to a pool of blood in the living room, police found more blood in the living room, bedroom, on the front door, and up the staircase. The

---

[2] According to the testimony of one of the officers, a "wanted" is issued when police have a subject that they would like to question in reference to a crime before bringing charges to the prosecuting attorney's office.

living room and bedroom also appeared to be in disarray as if there had been a struggle. Scott, who had left the scene, was arrested and taken into custody the next afternoon. While interviewing Scott, the police officer noticed cuts and abrasions on his knuckles. Scott told the officer "that's what happens when you punch somebody in the face."

On May 9, 2019, a grand jury indicted Scott for the charges at issue here. At trial, the State sought, pursuant to the doctrine of forfeiture by wrongdoing, to admit into evidence the January 6, 2018, statement M.J. made to the police officer that Scott had told her after he beat her that he "should have finished what he started." The court overruled Scott's objection and allowed the statement in evidence. On April 20, 2022, the jury convicted Scott of first-degree murder, fourth-degree domestic assault, and violation of an order of protection and the trial court sentenced him to life in prison without the possibility of parole for the murder and one year each for the assault and order of protection violation with all sentences ordered to run concurrently. This appeal follows.

**Standard of Review**

The standard of review for the admission of evidence is abuse of discretion. *State v. Henderson*, 826 S.W.2d 371, 374 (Mo. App. E.D. 1992). A trial court has broad discretion in choosing to admit or deny evidence. *Id.* "An abuse of discretion is found when the decision to admit or exclude the challenged evidence is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration." *State v. Barriner*, 210 S.W.3d 285, 296 (Mo. App. W.D. 2006). We view the facts in the light most favorable to the trial court's ruling and disregard facts and inferences to the contrary. *Id.* If we find that the trial court abused its discretion, we reverse only if the prejudice resulting from the improper admission is outcome-determinative. *State v. McGee*, 284 S.W.3d 690, 701 (Mo. App. E.D. 2009). Whether a criminal

4

defendant's Confrontation Clause rights were violated by the admission of evidence is a question of law that we review *de novo*. *State v. Buechting*, 633 S.W.3d 367, 376 (Mo. App. E.D. 2021).

We review the denial of a motion for acquittal to determine if the State adduced sufficient evidence to make a submissible case. *State v. Davis*, 219 S.W.3d 863, 866 (Mo. App. S.D. 2007). When an appellant brings a sufficiency of evidence challenge, our review is limited to "whether there is sufficient evidence from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt" as to each element of the crime. *State v. Pike*, 162 S.W.3d 464, 473 (Mo. banc 2005); *State v. Parsons*, 152 S.W.3d 898, 920 (Mo. App. W.D. 2005). This Court considers evidence, direct and circumstantial, including all its reasonable inferences, in the light most favorable to the judgment and disregards all contrary evidence and inferences. *Id.* at 473-74 (citing *State v. Chaney*, 967 S.W.2d 47, 52 (Mo. banc 1998)).

## Discussion

### *Forfeiture by Wrongdoing*

Scott first asserts that the trial court abused its discretion when it admitted over defense counsel's objection the January 6, 2019, hearsay statement M.J. made to a police officer after Scott beat her, that Scott had told her he "might as well finish what he started" since she was going to contact police. Scott argues that the forfeiture by wrongdoing doctrine, upon which the trial court based its ruling, is inapplicable because there was no evidence that Scott murdered M.J. for the purpose of preventing her from testifying against him for the January 6 domestic assault charge.

"Hearsay is an out-of-court statement offered to prove the truth of the matter asserted and depends on the statement's veracity for its value." *State v. Hollowell*, 643 S.W.3d 329, 337 (Mo. banc 2022). The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . be confronted with the witnesses against

5

him." U.S. Const. amend. VI. The Missouri Constitution also provides that, "in criminal prosecutions the accused shall have the right to . . . meet the witnesses against him face to face." Mo. Const. art. I, sec. 18(a). Under the Confrontation Clause, a court should exclude testimonial hearsay statements of a witness who does not appear at trial. *State v. Hosier*, 454 S.W.3d 883, 896 (Mo. banc 2015).

The doctrine of forfeiture by wrongdoing is an exception to the hearsay rule in the context of the facts of this case. *Id.* at 897. "[T]he forfeiture by wrongdoing exception to the Confrontation Clause holds that 'if a witness is absent by [defendant's] own wrongful procurement, [defendant] cannot complain if competent evidence is admitted to supply the place of that which he has kept away. The Constitution does not guarantee an accused person against the legitimate consequences of his own wrongful acts.'" *Buechting*, 633 S.W.3d at 377-78 (*quoting State v. McLaughlin*, 265 S.W.3d 257, 271 (Mo. banc 2008)).

Section 491.016[3], which codifies the forfeiture by wrongdoing doctrine, provides that a hearsay statement made by a witness may be admissible after a court finds by a preponderance of evidence that (1) the defendant engaged in wrongdoing with the purpose of causing the witness's unavailability; (2) the said wrongdoing substantially contributed to the witness's unavailability; (3) the state exercised due diligence to compel the witness to appear or the witness is unavailable because the defendant caused her death; and (4) the witness fails to appear.

All four requirements of section 491.016 are present here—2, 3, and 4 are easily met because Scott fatally beat M.J. leaving her unavailable for trial. The first requirement—whether Scott murdered M.J. with the purpose of causing her unavailability—is the question we must address. This issue was directly addressed in *State v. McLaughlin* and *State v. Hosier*, both of

---

[3] All statutory references are to RSMo Supp. 2022 unless otherwise stated.

which relied on *Giles v. California*, 544 U.S. 353, 377 (2008), where the United States Supreme Court held that statements made by a murder victim to a police officer responding to a domestic violence call were admissible under the forfeiture by wrongdoing doctrine:

> Acts of domestic violence often are intended to dissuade a victim from resorting to outside help, and include conduct designed to prevent testimony to police officers or cooperation in criminal prosecutions. Where such an abusive relationship culminates in murder, the evidence may support a finding that the crime expressed the intent to isolate the victim and to stop her from reporting abuse to the authorities or cooperating with a criminal prosecution—rendering her prior statements admissible under the forfeiture doctrine. Earlier abuse, or *threats of abuse*, intended to dissuade the victim from resorting to outside help would be highly relevant to this inquiry, as would evidence of ongoing criminal proceedings at which the victim would have been expected to testify.

*McLaughlin*, 265 S.W.3d at 272 (*quoting Giles*, 544 U.S. at 377) (emphasis added).

In *McLaughlin*, the court found that the defendant had intended to make victim unavailable as a witness at his trials because the victim's statements about defendant's threats and abusive conduct were made during the time that she was attempting to break off the relationship and she had filed multiple orders of protection. *Id.* at 273 n. 10. Additionally, the victim's last order of protection was entered on the day of her death. *Id.* In *Hosier*, the court concluded that the forfeiture by wrongdoing doctrine applied to the victim's statements regarding defendant's conduct in her order of protection because the defendant had been harassing the victim and she had sought judicial intervention. 454 S.W.3d at 897.

The foregoing principles apply on all fours to this case and allow the admission into evidence of the hearsay statement that Scott told M.J. that he "might as well finish what he started" since she was going to contact police. M.J. had applied for multiple orders of protection during their relationship and M.J.'s final order of protection was entered the day before Scott was released from jail and it was served on Scott the day he beat her for the final time. Like the defendant in *McLaughlin*, who had a pending burglary charge against him at the time of the victim's death, Scott had the pending fourth-degree assault charge from the January 6 incident in

7

which M.J. was the complaining witness. And like the victim in *McLaughlin*, M.J.'s statement to police was also during the time in which she was trying to break away from her relationship with Scott by moving to Springfield, Missouri. Based on *McLaughlin* and *Hosier*'s holdings, this evidence is strongly corroborative that Scott killed M.J. to keep her from testifying at his trial for the assault or to prevent her from reporting further abuse. Therefore, Point I is denied. We also deny the related Point II.[4]

## *Deliberation*

In his final point on appeal, Scott argues that the trial court erred in denying his motion for judgment of acquittal at the close of all evidence because the State failed to prove that he was guilty of first-degree murder beyond a reasonable doubt in that there was insufficient evidence of deliberation. We disagree because the evidence strongly supports a finding of deliberation not the least of which was Scott's January 6 statement resolving to "finish what he started."

"The elements of murder in the first degree are that a person: (1) knowingly (2) caused the death of another person (3) after deliberation on the matter." *State v. Sokolic*, 660 S.W.3d 54,

---

[4] In Point II, Scott contends the trial court abused its discretion in admitting M.J.'s foregoing hearsay statement because it was not logically or legally relevant. In light of our holding in Point I, we need not reach this argument. Had we needed to reach it, we would reject it. "To be admissible, evidence must be both logically and legally relevant." *State v. Taylor*, 466 S.W.3d 521, 528 (Mo. banc 2015). "Evidence is logically relevant . . . when it has some legitimate tendency to establish clearly the defendant's guilt for the crime charged and is legally relevant when the probative value outweighs the prejudicial effect." *State v. Chism*, 252 S.W.3d 178, 184 (Mo. App. W.D. 2008). "The balancing of the probative value and prejudicial effect of evidence rests within the sound discretion of the trial court." *State v. Perkins*, 656 S.W.3d 285, 296 (Mo. App. E.D. 2022) (citing *State v. Williams*, 922 S.W.2d 845, 852 (Mo. App. E.D. 1996)). "Improperly admitted evidence which is cumulative of other properly admitted evidence is not prejudicial unless it is outcome determinative." *State v. Robinson*, 111 S.W.3d 510, 514 (Mo. App. S.D. 2003). Scott's statement is logically relevant because it tends to prove that Scott had a motive to kill M.J.—he did not want her to report the assault to police because he did not want to go to prison. "Evidence which establishes a defendant's motive for the crime for which he is on trial is relevant." *State v. Snider*, 869 S.W.2d 188, 193 (Mo. App. E.D. 1993). As for the statement's legal relevance, we find that the statement was not overly prejudicial because it was not outcome determinative due to the amount of other evidence.

57 (Mo. App. E.D. 2023). Deliberation means a cool reflection upon the victim's death for some amount of time, no matter how short. Section 565.002(5); *State v. Vickers*, 560 S.W.3d 3, 21 (Mo. App. W.D. 2018). "'Proof of deliberation does not require proof that the defendant contemplated his actions over a long period of time, only that the killer had ample opportunity to terminate the attack once it began.'" *State v. Strong*, 142 S.W.3d 702, 717 (Mo. banc 2004) (*quoting State v. Johnston*, 957 S.W.2d 734, 747 (Mo. banc 1997)). A mere instant is sufficient to qualify as deliberation. *State v. Perkins*, 600 S.W.3d 838, 846-47 (Mo. App. E.D. 2020) (citing *State v. Nathan*, 404 S.W.3d 253, 266 (Mo. banc 2013)).

Moreover, deliberation is often proven by circumstantial evidence. *State v. Rousan*, 961 S.W.2d 831, 841 (Mo. banc 1998). "The inference of deliberation is strengthened when there is evidence the defendant inflicted 'multiple wounds or repeated blows.'" *Sokolic*, 660 S.W.3d at 58 (*quoting State v. Cole*, 71 S.W.3d 163, 169 (Mo. banc 2002)). Furthermore, "[a] prolonged struggle is evidence of deliberation." *Johnston*, 957 S.W.2d at 748. "Where a defendant commits a murder which, because of the particular method of attack, required some time to complete, this Court has permitted an inference of deliberation." *Johnston*, 957 S.W.2d at 747 (*quoting State v. O'Brien*, 857 S.W.2d 212, 218-19 (Mo. banc 1993)). An inference of deliberation can also be strengthened by the defendant fleeing the scene of the crime without helping the victim. *Id.* (citing *State v. Mills*, 623 S.W.3d 717, 725 (Mo. App. E.D. 2021)). A defendant's statements before the crime occurred can also support an inference that he acted with deliberation. *Id.* A trier of fact can infer motive to kill, and hence deliberation, from an acrimonious relationship. *State v. Gomez*, 672 S.W.3d 113, 120 (Mo. App. S.D. 2023) (citing *State v. Miller*, 220 S.W.3d 862, 868 (Mo. App. W.D. 2007)).

Our review of the record reveals sufficient evidence existed to support the jury's verdict. First, M.J. suffered multiple blows to the head. She had brain injuries and several facial fractures

9

to her eyes and nose which indicate that she was struck more than once. A jury could surmise that M.J.'s injuries were so numerous and severe that Scott was aware or certain that the beating could cause her death and therefore that he murdered her after deliberation.

Scott and M.J.'s home was also in disarray when officers arrived. There was blood in both the living room and the bedroom. This indicates a prolonged struggle which could show that Scott had ample opportunity to stop his attack. In *Johnston*, the Court found there was sufficient evidence that defendant deliberated because he beat his wife to death after chasing her. 957 S.W.2d at 747. Thus, here, the jury could conclude that Scott deliberated given the evidence of a prolonged struggle.

Moreover, Scott was not present at the crime scene when officers arrived. In *Sokolic*, this Court found that the defendant's flight from the scene, when the victim was lying face down "saturated" with blood, strengthened the inference of deliberation. 660 S.W.3d at 59. Here, M.J.'s injuries were severe. Her blood was found throughout the home. She was unconscious and needed medical help, but Scott fled. These facts support the inference of deliberation.

Finally, that Scott killed M.J. the very day that he was released from jail in connection with the January 6 assault strongly indicates that he deliberated before the final and fatal assault. The jury could conclude from this record that Scott stewed in anger toward M.J. for putting him in jail and resolved to "finish what he started" upon his release. Point III is denied.

### Conclusion

For the reasons set forth above, we affirm the convictions and judgment of the trial court.

_____
James M. Dowd, Judge

Thomas C. Clark, II, P.J., and
John P. Torbitzky, J. concur.

10